HUTCHINS v HUTCHINS

OPINION OF THE COURT

1. DIVORCE—DISTRIBUTION OF ASSETS—RETIREMENT PENSIONS—AVAIL-
ABLE ASSETS—EQUITABLE PERCENTAGES.

Accumulated salary deductions for a retirement pension which
would be payable to the employee or his legal representative in
the event he resigns or is dismissed prior to retirement are
funds which would have been available to the employee and his
spouse during their marriage for investment and should there-
fore be included in the total assets of the parties subject to
distribution in divorce proceedings; actual apportionment of the
retirement pension is not required, but the amount should be
valued as one element to be included in determining the entire
assets to be allocated between the parties with the trial court
fixing a percentage or portion thereof which under existing
circumstances is equitable.

2. DIVORCE—ATTORNEY FEES—CONTRIBUTION—DISCRETION.

Contribution toward attorney fees in a divorce case is a matter
within the discretion of a trial court.

DISSENT BY D. E. HOLBROOK, JR., J.

3. DIVORCE—APPEAL AND ERROR—RETIREMENT BENEFITS—PRIOR CON-
SIDERATIONS.

*Reversal of a divorce judgment for inclusion of the husband's
retirement benefits in the distribution of assets is unnecessary
where those benefits were, in fact, considered by the court in
determining the issues of alimony and property settlement.*

Appeal from Ingham, Ray C. Hotchkiss, J. Sub-

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 24 Am Jur 2d, Divorce and Separation § 632.
Pension of husband as resource which court may consider in
determining amount of alimony. 22 ALR2d 1421.
Earning capacity or prospective earnings of husband as basis of
alimony. 139 ALR 207.
[2] 24 Am Jur 2d, Divorce and Separation § 586.

mitted June 4, 1976, at Lansing. (Docket No. 25674.) Decided September 27, 1976.

Complaint by Robert L. Hutchins against Iva L. Hutchins for divorce. Judgment for plaintiff. Defendant appeals a portion of the judgment awarding alimony and attorney fees. Reversed and remanded.

*Church, Wyble, Kritselis & Tesseris* (by *J. Richard Robinson),* for plaintiff.

*Hubbard, Fox, Thomas & Born,* for defendant.

Before: ALLEN, P. J., and D. E. HOLBROOK, JR., and E. H. PAPP,* JJ.

E. H. PAPP, J. A judgment of divorce was granted to the plaintiff, Robert Lloyd Hutchins, against his wife. Iva Lea Hutchins appeals from that portion of the judgment having to do with the property division, alimony and attorney fees. Custody of the minor son, born July 14, 1958, was awarded to the defendant, and support of said minor son is not at issue in this appeal nor need it be considered since he has now reached the age of 18 years.

Defendant-wife claims the trial court erred and thus abused its discretion when it failed to take into account the plaintiff-husband's retirement pension in calculating the total assets of the parties subject to distribution, in awarding her alimony and limiting it to a five-year period after 29 years of marriage, and in awarding attorney fees to her in the "statutory amount" of $180.

Briefly, the testimony of the defendant-wife

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

showed that the parties were married for 29 years, that six children were born to the parties, and that she was 53 years of age. In the year 1964, after the children were more mature, she worked on a part-time basis and in 1973 started working full time. She received absolutely nothing in the way of fringe benefits and her average weekly net take-home pay was between $93 and $103. Plaintiff-husband's testimony indicates that he was 51 years of age, a licensed mortician, had been a Michigan State Trooper for 23 years before retiring in July of 1974 at an earlier age than was required, that he received $3,500 in severance pay and thereafter commenced to receive monthly pensions of $545. In March of 1975, he started to work as a court officer in the Lansing District Court at a yearly salary of $10,200, or $614 net per month.

The trial judge in rendering his decision stated:

" * * * part of the current difficulty in Michigan law is what is the status of retirement benefits and programs for either spouse in a divorce situation * * * . Until the law becomes more established in Michigan, that is, an adequate guideline for the trial court, it must be kept in line, this is not an appellate or policy-making court, this is a trial court.

"It has been my position that, per se, participation pro-rata in retirement benefits is not approved or disapproved under Michigan law. And I have not, to this juncture, allowed pro rata participation in retirements of either spouse. The only manner in which I have attempted to adjust it has been in relation to either giving an award in all money or an award in division of property to try to compensate for what the inequity might be."

The first question we are faced with is whether or not the trial judge should have considered as an award in the division of property the retirement

pension of the defendant-husband. We are of the belief that it is time to resolve this question which has been plaguing the trial courts, and for our answer we look to the public safety department pension, accident and disability fund act. 1935 PA 251; being MCLA 28.101 *et seq.;* MSA 3.331 *et seq.* Section 1 of the act reads as follows:

"There is hereby created and established a continuing fund to be known as the Michigan department of public safety pension, accident and disability fund. Such fund shall be made up from contributions from members of the Michigan department of public safety who have subscribed to the constitutional oath of office, from the rewards offered and accepted for such fund and from a yearly sum to be paid into such fund from the appropriation of the Michigan department of public safety in such an amount as shall be deemed sufficient by the commissioner of the Michigan department of public safety approved by the state administrative board to carry out the provisions of this act."

It is apparent that an individual account is maintained for each member, who shall contribute every month, 5% of his monthly salary. Any member who resigns or is dismissed for reasons other than breach of the public trust from the Michigan department of public safety shall receive in a lump sum, payable to him or his legal representative, 100% of the contributions made by him into the fund. In the event of death or legal disability the member or his legal representative may apply. MCLA 28.103; MSA 3.333, as amended by 1965 PA 165.[1]

A further reading of the act indicates that a member who has retired shall receive an annual pension, payable monthly, and in the event of

[1] MCLA 28.103; MSA 3.333 has been amended by 1974 PA 214, effective July 15, 1974.

death of such retired member, such pension shall continue to be paid to his widow for the rest of her natural life, or until she remarries. MCLA 28.107(a); MSA 3.337(a) as amended by 1965 PA 23.[2]

Our search reveals no Michigan cases directly on this issue; however, we do find cases wherein workmen's compensation payments to the husband were properly subject to the terms of a divorce decree. *Petrie v Petrie,* 41 Mich App 80; 199 NW2d 673 (1972), *lv den* 388 Mich 771. And in *Kauppi v Dow Chemical Co,* 40 Mich App 448; 198 NW2d 897 (1972), this Court approved a divorce decree wherein the wife was to share a percentage of the benefits that her husband would actually receive and be paid by virtue of a certain retirement pension and profit sharing plan. Since we found no Michigan case directly on this point we turned to other states for enlightment. In our research in community and noncommunity property states, we find the courts holding that state pensions, private pensions, profit-sharing trust and military pensions could be properly distributed as property under a decree of divorce.

In the State of Washington, a community property state, the Supreme Court in *Payne v Payne,* 82 Wash 2d 573; 512 P2d 736 (1973), held that an interest in a military retirement program and anticipated monthly benefits could be properly distributed as property under a decree of divorce. In *Loomis v Loomis,* 47 Wash 2d 468, 479; 288 P2d 235 (1955), the court noted that it was inclined to agree that a military pension is not in the nature of future earnings, but is an asset acquired during coverture and is not a gift or gratuity accruing to

---

[2] MCLA 28.107(a); MSA 3.337(a) has been amended since the plaintiff retired.

the husband. See also *Kirkham v Kirkham,* 335 SW2d 393 (Tex Civ App, 1960). In other community property states, the courts today regard military retirement plans and other retirement pay as a mode of employee compensation. It is an earned property right which accrues by reason of a specified number of years of service in a particular branch of the armed services. Citing *Berkey v United States,* 361 F2d 983; 176 Ct Cl 1 (1966), *Mora v Mora,* 429 SW2d 660 (Tex Civ App 1968), *LeClert v LeClert,* 80 NM 235; 453 P2d 755 (1969), *In re Marriage of Karlin,* 24 Cal App 3d 25; 101 Cal Rptr 240 (1972).

The same court in *Morris v Morris,* 69 Wash 2d 506; 419 P2d 129 (1966), in making an award to the wife said she was given "an interest in a specific amount of the military pension". And in *Roach v Roach,* 72 Wash 2d 144; 432 P2d 579 (1967), the Supreme Court there held that even though a military pension is "not a fixed asset but is an emolument or economic advantage of office", did not preclude the court from treating certain aspects of that pension as property, regardless of the fact that there are inherent limitations that make it different from fixed assets.

However, plaintiff-husband in the present case argues that Michigan is not a community property state and points to a case in a noncommunity property state, *In re Marriage of Ellis,* 538 P2d 1347 (Colo App, 1975), wherein the Colorado Court of Appeals expressly ruled that although the husband had retired from the army and was drawing a net monthly pension, the retirement pay was not "property" to be divided with the wife at divorce. We have read the *Ellis* case. There, the Court of Appeals found that the husband never contributed to the fund, that the amount of retirement pay

was wholly within the control of Congress, that a
retired soldier could expect increases or reductions
which might be legislated from time to time and
therefore retirement pay was not a fixed or tangi-
ble asset having any cash surrender, loan, redemp-
tion or lump-sum value. However, the court did
find it to be a resource of the husband in the
nature of income to be received in the future to be
considered in fixing the amount of maintenance
and child support which the husband was able to
pay as related to the needs of the wife and chil-
dren. We believe the facts in *Ellis, supra,* are far
removed from the case we are asked to consider.

In *In re Marriage of Pope,* 544 P2d 639 (Colo
App, 1975), another Colorado case, we find that the
facts are similar to the case at hand. There, the
husband, an employee of the state, under the
Colorado Public Employee Retirement Association
Act (PERA) § 24-51-101 *et seq.,* CRS 1973, was
required to pay into the retirement fund a per-
centage of his salary through the medium of pay-
roll deductions, and these contributions were then
paid into a retirement fund which consisted princi-
pally of accumulated deductions from salaries of
members. If the employee terminated his employ-
ment for any reason other than death or retire-
ment, the full amount of accumulated deductions
was refunded. In the event of death, the accumu-
lated deductions were paid in a lump sum to
designated beneficiaries or heirs. In the event of
retirement or disability, the employee received a
fixed amount based upon his final average salary
(although there are other options available). The
Colorado Court stated:

"An examination of this statutory scheme leads to
the conclusion that the PERA system treats the accu-
mulated deductions in the husband's account in a man-

ner which makes them marital property. The funds are not subject to forfeiture in any manner, and are in some respects a forced savings account. The husband's interest in these funds was created out of deductions from his salary which otherwise would have been available to the parties during their marriage. His rights in the fund are fully vested and not subject to divestment.

\* \* \*

" \* \* \* the interest of the husband or his estate is not subject to divestment by death or discharge. \* \* \* His rights have a presently determinable cash surrender value \* \* \* . Even though the husband's interest in the fund is, by its nature incapable of division in kind, the value of that interest was properly taken into account in this property division." *Pope, supra,* 639–641.

In *Schafer v Schafer,* 3 Wis 2d 166; 87 NW2d 803 (1958), the Wisconsin Supreme Court[3] held it was an abuse of discretion by a trial court to make a division of property without taking into account the present value of a husband's interest in a government pension which would be receivable by him in the future. In this case, Mr. Schafer was employed by the United States Post Office Department for 32 years and contributed out of his salary to the Federal civil service retirement and disability fund. The Supreme Court determined that the interest of Mr. Schafer in the retirement fund had no realizable cash surrender value unless he separated himself from the postal service, but held:

"While it is true that the husband's interest in the retirement fund by its very nature is an asset that is incapable of division by the court between the parties so as to award the wife a portion thereof, nevertheless, we consider that its value should have been ascertained and taken into account by the trial court in making the division of estate.

---

[3] Wisconsin is not a community property state.

\* \* \*

"We, however, reverse the award of alimony as well as the property division so that the trial court can exercise its discretion as to whether any alimony should be awarded in case the court should be of the opinion that the new division of estate to be made renders it advisable to dispense with alimony." *Schafer v Schafer, supra.*

In a more recent Wisconsin case, *Pinkowski v Pinkowski,* 67 Wis 2d 176; 226 NW2d 518 (1975), the Supreme Court found it to be error and an abuse of discretion not to include in the assets for distribution the value of a pension a husband had with a private employer, though he had not as yet retired, even though the trial court awarded the wife alimony "as the only practical way under the circumstances of this case that Mrs. Pinkowski can have some benefit of her husband's pension". The Court went on to say: "[i]f it is regarded merely as a source for the payment of future alimony and was not included among the assets, she would receive no benefit from the fund if she were to remarry." The case was remanded to include the present value of the pension fund as an asset to be distributed, and also to review the alimony provision. See also *Schneider v Schneider,* 15 Wis 2d 245; 112 NW2d 584 (1961) (profit-sharing trust), *Kronforst v Kronforst,* 21 Wis 2d 54; 123 NW2d 528 (1963) (profit-sharing trust), *Parsons v Parsons,* 68 Wis 2d 744; 229 NW2d 629 (1975) (retirement trust).

Turning to a noncommunity property state in the East, we find *Pellegrino v Pellegrino,* 134 NJ Super 512; 342 A2d 226 (1975). The Superior Court stated that inasmuch as the husband, a fireman, or his beneficiary had an absolute right under the statute to the repayment of his contribution either

directly as a part of his retirement benefits or as a
death benefit, the husband had a fixed right to the
future enjoyment of the contributions paid by him
and his interest was vested, and the funds contrib-
uted by the husband from his earnings were prop-
erty acquired during marriage and subject to equi-
table distribution. Both the fireman and his em-
ployer contributed to the pension fund. The Supe-
rior Court went on to say:

"We are mindful of our Supreme Court's suggestion
that the concept of 'vesting' should probably find no
significant place in the developing law of equitable
distribution and that the customary uses of that con-
cept are not relevant to the question of effecting such
distribution. *Stern v Stern,* 66 NJ 340, 348 [331 A2d
257, 262] (1975). As the court said therein 'Our statute
requires, in order that property be available for distri-
bution incident to a divorce, that it shall have been
*acquired* during the marriage. There is no reference to
vesting.' " *Pellegrino, supra,* at 515–516.

However, in *White v White,* 136 NJ Super 552;
347 A2d 360 (1975), where the entire cost of the
benefits under a pension plan was paid by the
employer, the husband had no right of withdrawal,
and full compliance with the eligibility require-
ments was necessary, the court held "that what-
ever right the plaintiff presently has under the
pension plan, it does not constitute property * * *
subject to distribution".

Returning to the Michigan public safety depart-
ment pension, accident and disability fund leads
us, as do other jurisdictions with similar statutes,
to the conclusion that it also treats the accumu-
lated deductions in the husband's account in a
manner which makes them marital property.
Here, the plaintiff-husband's interest was created

in most part from his salary, and we agree with the defendant-wife that these deductions would have been available to the parties during their marriage to be invested in stocks, bonds, savings account, annuity and/or other investments. The plaintiff-husband's right in the fund is fully vested and cannot be subjected to divestment or forfeiture, except as herein noted for breach of the public trust. We also hold that it is property that came to the plaintiff by reason of the marriage and therefore should be included in the total assets of the parties. As in New Jersey, our divorce laws make no reference to vesting. See MCLA 552.1 *et seq.;* MSA 25.81 *et seq.* Therefore, it must be included as an asset in the distribution of property.

In the instant case the plaintiff-husband has retired and is now receiving a net sum of $545 per month, so the value of that particular asset is not difficult to determine. In remanding the case to the trial court we are suggesting that in addition to the retirement pension, it should also determine the value of the fringe benefits the husband is now receiving from his present employer, particularly in view of the fact that the defendant-wife receives absolutely none and does have a history of back problems, although at the time of the divorce she was in good health. We also suggest that a more thorough inquiry be made as to where the $3500 severance pay went inasmuch as plaintiff-husband testified that he only bought groceries and did not have to pay rent or utilities. The court should also determine the husband's reasons for increasing the loan at the state credit union after he left the marital home. We believe, in fairness to both parties, a more meaningful evaluation of the parties' assets, debts, individual needs, age, length of marriage, employment skills, taxes on and deduc-

tion for alimony, and the cost of maintenance and repairs on the marital home should be made. We are of the opinion that in order to arrive at the true value of the parties' assets, appraisals should be obtained unless counsel can agree on the values.

In determining that the retirement pension is subject to an equitable distribution we are not directing an actual apportionment of that specific fund. Rather, the amount thereof must be examined and valued as one element to be included in determining the entire assets to be allocated between the parties. In so including it, the trial judge will fix such percentage or portion thereof, which under the existing circumstances is equitable.

We find no abuse of discretion in the award of $25 per week alimony to the defendant-wife for a period of five years, but reverse said alimony award so that the trial judge can exercise his discretion as to whether the alimony should be eliminated if he is of the opinion that the new division of the parties' assets, which he is to make, renders it advisable.

The last issue raised by the defendant-wife is that the trial court failed to exercise its discretion in granting only the statutory fee of $180 for attorney fees. We are not in a position to say. As our Supreme Court has stated many times, contribution toward attorney's fees is also a matter within the discretion of the trial court. There is nothing in the record to show what her total attorney fees were, nor the hours her attorney spent on the case, nor is there any evidence establishing a need on her part for a certain sum. However, in view of further proceedings at the trial level and this appeal, the trial court may determine the same to be inadequate.

Those portions of the judgment which make a division of the parties' estate and award of alimony are reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Costs to defendant-appellant.

Remanded.

ALLEN, P. J., concurred.

D. E. HOLBROOK, JR., J. *(dissenting).* Since my reading of the court's findings leads me to conclude that the trial judge did consider the husband's retirement benefits in determining the issues of alimony and property settlement, I see no reason to reach the issue raised by appellant and would affirm the trial court.