## DARWISH v DARWISH

Docket No. 43172. Submitted April 7, 1980, at Detroit.—Decided October 22, 1980.

Plaintiff, Fatima Darwish, and defendant, Kenneth J. Darwish, were divorced by a judgment entered by the Wayne Circuit Court, Thomas Roumell, J. Defendant appeals, alleging numerous errors. *Held:*

1. Both parties were employed during the marriage. Plaintiff had purchased stock of her employer through a payroll deduction plan. The trial court erroneously held the stock to be her separate property. The stock should have been evaluated as a marital asset.

2. The trial court erred in considering a written appraisal of the value of the marital home submitted by plaintiff over defendant's objection. A witness who is to give an opinion an untrained layman could not give must first be qualified, and there was no opportunity to qualify the appraiser.

3. Wedding gifts which are to be used and enjoyed jointly should be considered the same as property purchased by the husband and wife jointly for purposes of a division of property, in the absence of a showing that the intent of the donor was to earmark the gift for the benefit of one of the spouses.

Reversed and remanded with instructions.

1. DIVORCE — MARITAL ASSETS — STOCKS — EMPLOYEE STOCK PURCHASE PLAN — BONDS — PAYROLL DEDUCTIONS.

Stock obtained during the marriage by one spouse through an employee stock purchase plan and bonds bought through payroll deductions are to be valued as part of the marital assets to be allocated between the parties upon a divorce.

REFERENCES FOR POINTS IN HEADNOTES

[1] 24 Am Jur 2d, Divorce and Separation § 928.
[2] 31 Am Jur 2d, Expert and Opinion Evidence § 26 *et seq.*
[3] 31 Am Jur 2d, Expert and Opinion Evidence § 45.
[4, 5] 24 Am Jur 2d, Divorce and Separation § 933.
[6] 24 Am Jur 2d, Divorce and Separation §§ 929, 930.

2. WITNESSES — EXPERT WITNESSES — QUALIFICATIONS — EVIDENCE.

A witness who is to give an opinion an untrained layman could not give must first be qualified.

3. EVIDENCE — EXPERT TESTIMONY — APPRAISALS — CROSS-EXAMINATION.

A trial court, in determining the value of certain real property, erred in considering, over objection, an appraisal letter submitted by one party after the close of proofs without the opportunity for cross-examination by the adverse party.

4. DIVORCE — DIVISION OF PROPERTY — DISCRETION — APPEAL.

The division of property in a divorce case is a matter addressed to the discretion of the trial court; the Court of Appeals will not reverse an award of property unless it is convinced that it would have reached a different result had it occupied the position of the trial court.

5. DIVORCE — DIVISION OF PROPERTY — CONSIDERATIONS.

A determination as to property division in a divorce case necessitates consideration of: (1) the duration of the marriage; (2) contributions of the parties to the joint estate [sources of property]; (3) age; (4) health; (5) station in life; and (6) necessities, circumstances, and earning ability of the parties, and must be fair in light of the overall financial circumstances of the parties.

6. DIVORCE — DIVISION OF PROPERTY — WEDDING GIFTS.

Wedding gifts which are to be used and enjoyed jointly should be considered the same as property purchased by the husband and wife jointly for purposes of a division of property, in the absence of a showing that the intent of the donor was to earmark the gift for the benefit of one of the spouses.

*Elizabeth Burch,* for defendant.

Before: DANHOF, C.J., and CYNAR and MAC-KENZIE, JJ.

CYNAR, J. Following trial, a judgment of divorce was entered on June 9, 1978. Defendant's motion for a new trial was denied on January 2, 1979, and defendant now appeals from the terms of the judgment of divorce.

On appeal, defendant contests the division of certain personal property as well as the determination of his interest in the marital residence and claims the trial court erred in not granting a new trial.

The parties were married on June 2, 1973, and separated in September of 1977. One child, a daughter, was born to the parties on August 13, 1976.

Plaintiff was employed as a secretary by Ford Motor Company. At the time of the divorce proceedings, she had been employed for five years, earning an annual gross income of $15,120. Defendant had been employed with the Wayne County Sheriff's Department for three years before the hearing on the divorce, earning about $14,900 per year.

During the marriage, the parties acquired a home in Dearborn Heights. The home was purchased in January of 1977 for $42,500. A jointly earned sum of $20,000 was used by the parties as a deposit on the house. Defendant's parents advanced the balance of the amount due and took a mortgage from the parties in the amount of $23,-000 at seven percent interest per annum. Approximately $6,000 had been spent on improvements to the home, in addition to work done gratis by defendant's father.

The trial court ruled that the objects of matrimony had broken down. Plaintiff was awarded custody of the minor child with rights of reasonable visitation to defendant. Defendant was ordered to pay $55 per week support for the child as well as to pay for the necessary medical, dental, and hospital expenses of the child until she reached the age of 18 years.

The parties were awarded their own automobiles.

Plaintiff was awarded certain Ford stock and bonds. Further, plaintiff was awarded a bedroom set, a Panasonic AM transistor radio, a Hamilton dryer, a sofa-type chair, dinnerware and silverware sets, and all wedding gifts. Defendant was awarded a Sony digital clock, a Sony color television set and the garden tools. All other personal belongings of the parties were to be retained by the party having possession.

Plaintiff was awarded possession of the marital residence, subject to certain conditions, and the court ruled that the defendant was entitled to a $12,700 share of the equity in the house, payable under certain conditions. Following the filing of the judgment of divorce on June 9, 1978, plaintiff filed a motion for a new trial. The trial judge signed an order on August 3, 1978, approved for entry by both counsel, which provided that: (1) the court would hold the motion for a new trial in abeyance pending appointment by the court of one Thomas O'Brien as appraiser of the marital home; and (2) the appraisal value would be used to determine the fair market value of the home. Upon fixing the value, the court would provide in the judgment that the plaintiff shall buy the defendant's interest in the marital home and remortgage the marital home to pay off the first mortgage. The question of support and visitation was ordered submitted to the Friend of the Court for investigation and recommendation. In addition, the order provided that the attorney for defendant was to present a memorandum of law within 30 days concerning the award of Ford stock and bonds. The trial judge wrote a letter to both counsel on September 29, 1978, acknowledging the submission of a memorandum of law dated September 11, 1978, as had been requested, concern-

ing the Ford stock, and suggested that further proofs be submitted to the court in the event the parties were unable to dispose of the problem between themselves. The lower court records indicate no further disposition relative to the order dated August 3, 1978, or the letter of the trial judge dated September 29, 1978. Defendant's motion for a new trial was denied on January 2, 1979.

Plaintiff was a participating member in a stock purchase plan provided by her employer, Ford Motor Company, having enrolled in the plan on January 1, 1974. Under said plan, for every dollar contributed by an employee toward the acquisition of Ford stock, Ford Motor Company contributed 50 cents. The plan was available to all Ford salaried employees and was an additional income benefit with a deferred tax benefit. Automatic payroll deductions and plaintiff's participation in the stock purchase plan would continue until she either retired, terminated her employment, or chose no longer to engage in the program. The fair market value of the stock was estimated to be in excess of $9,000. In addition, the plaintiff acquired seven $25 savings bonds through the payroll deduction plan, which bonds are held by Ford Motor Company until they reach face value.

The trial court, in rendering its property division, awarded the stock and bonds solely to the plaintiff on the apparent reasoning that, if it came out of her paycheck, it was her separate property.

Defendant contends that he contributed to the acquisition and accumulation of the stock because he used his salary to support and maintain the family while at the same time plaintiff's salary was used to accumulate the stock savings. Defendant further maintains that the defendant's parents loaned money to the parties to help facilitate the purchase of the stock.

There are no Michigan cases which deal directly with the precise issue of whether stocks and bonds purchased by a party through a payroll deduction plan are a part of the marital estate subject to division upon dissolution of the marriage. However, the rationales of a number of cases are helpful to our analysis of this issue in the case at bar.

In *Hutchins v Hutchins,* 71 Mich App 361; 248 NW2d 272 (1976), this Court held that the trial court erred and thus abused its discretion when it failed to take into account the husband's retirement pension in calculating the total assets of the parties subject to distribution. The Court reached its conclusion based upon the premise that the pension benefits were created by deductions from the husband's salary, which would otherwise have been income of the parties during the marriage. Since the husband received a vested right to the pension plan during the marriage, that vested right became part of the marital estate. The Court in *Hutchins* did not direct an actual apportionment of that specific pension fund; rather, the amount was to be examined and valued as one element to be included in determining the entire allocable assets of the parties. See also *Chisnell v Chisnell,* 82 Mich App 699; 267 NW2d 155 (1978), *lv den* 403 Mich 844 (1978), *cert den* 442 US 940; 99 S Ct 2881; 61 L Ed 2d 310 (1979).

In *Miller v Miller,* 83 Mich App 672; 269 NW2d 264 (1978), this Court followed *Hutchins, supra,* in finding that pension interests funded solely by the employer are also part of the marital estate subject to distribution upon divorce. In both *Hutchins* and *Miller,* it was concluded that before pension benefits may be considered to be distributable they must have a reasonably ascertainable present value.

The rationale set forth in *Hutchins* and *Miller* can be extended to the instant case. There is no question that stocks and bonds, even more so than pension benefits, have a reasonably ascertainable value which can easily be calculated. As plaintiff herself testified, she had a right to withdraw from the purchase plan at will and convert the stock into cash. Moreover, as in *Hutchins, supra,* the stock and bonds were acquired by deductions from plaintiff's salary, which otherwise would have been income to the parties during the marriage. Therefore, the stock and bonds in issue here should have been examined and valued as part of the marital assets to be allocated between the parties.[1]

Upon remand, the trial court is to make a determination of the precise value of the stock and bonds and make an equitable distribution thereof.

Plaintiff and defendant purchased the marital home on January 27, 1977, for the sum of $42,500, making a $20,000 down payment and arranging a $23,000 mortgage at seven percent interest per annum with the parents of the defendant to cover the balance of the purchase price. Improvements made to the home were in the vicinity of $6,000.

---

[1] Our conclusion that the stock and bonds constituted a part of the marital estate, as opposed to being the wife's separate property, distinguishes the instant case from *Charlton v Charlton,* 397 Mich 84; 243 NW2d 261 (1976). In *Charlton,* the Court concluded that a wife's inheritance received during the parties' marriage was prima facie her separate property. However, under certain circumstances, the Court noted, such property could be included in the marital estate for purposes of property division, and awarded to the husband, *i.e.,* where the trial court found either: (1) that the husband contributed to the acquisition, improvement or accumulation of such property, under MCL 552.401; MSA 25.136; or, (2) that the parties' marital property was insufficient to provide for the suitable support of the husband or children of the marriage in his care and custody, under MCL 552.23; MSA 25.103. Our holding that the stock was marital property obviates the need to address the questions raised in *Charlton* under MCL 552.401 and MCL 552.23, since these inquiries come into play only upon a threshold finding that a particular item is the wife's separate property.

In addition, defendant's father testified that he did a substantial amount of work to maintain or improve the home and placed a value on his labor in the area of $5,000.

At trial, defendant presented as a witness John J. Brennan, an expert appraiser, who placed the fair market value of the marital home at $55,000. No appraisal or valuation was submitted to the trial court by the plaintiff during the trial. However, two days after the close of proofs, over the strenuous objection of defendant, plaintiff was allowed to submit to the court an appraisal based on a letter from Garlings of Dearborn, which appraisal placed the value of the marital home at $46,000. The court in its opinion fixed the present value of the home for purposes of property settlement and disposition by taking the difference between the Brennan and Garlings appraisals, $9,000, multiplying that $9,000 by 60 percent, which equalled $5,400, and then by adding $5,400 to the purchase price, thus establishing the present value of the house at $47,900. Each party was awarded an equity of $12,700, which was arrived at by taking each party's initial contribution of $10,000 and adding to it one half of $5,400 or $2,700. Plaintiff had a choice of either paying defendant $12,700 as of the date of judgment or of having a lien imposed on the property entitling the husband to annual interest at three percent while the lien is in existence, up to the time plaintiff remarries or the minor child reaches 18 years of age.

Defendant filed a motion for a new trial on June 27, 1978. The trial court, holding in abeyance any decision on the motion for new trial, entreated the parties to resolve the dispute between themselves and further suggested resolution of the dispute by

appointment of an independent appraiser to establish a current value of the house, stating "we will move from there". As previously indicated, an order dated August 3, 1978, appointed Thomas O'Brien as the independent appraiser. Continuing, the order stated that upon fixing the value of the marital home, the wife would buy the husband's equity and remortgage the premises to pay off the mortgage held by defendant's parents. The order also provided that the question of support and visitation would be sent to the Friend of the Court, for investigation and recommendation. As far as we are able to determine from the record, the August 3, 1978, order still stands. On January 2, 1979, the trial court denied defendant's motion for a new trial. The record before us includes neither a transcript containing the reasons for the denial of the motion for a new trial nor any order denying said motion.

Defendant contends that the trial court's admission into evidence and reliance on plaintiff's tardily submitted appraisal deprived him of his right to cross-examine the witness concerning his qualifications as an expert as well as the basis for his appraisal figure. We agree with this contention. If a witness is to give an opinion an untrained layman could not, the witness must first be qualified. *Moore v Lederle Laboratories*, 392 Mich 289; 220 NW2d 400 (1974). MRE 705, fully applicable to the case at bar, further states:

"The expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination."

In *In re Parkside Housing Project,* 290 Mich 582, 593; 287 NW 571 (1939), the Court held that upon cross-examination of an adverse expert witness for the city in a condemnation proceeding, counsel for the land owners had a right to ask questions concerning the witness's knowledge which formed the basis of his opinion of the value of the property involved. Defendant was not afforded an opportunity to question plaintiff's appraiser from Garlings regarding his expertise nor the manner in which he arrived at his opinion of fair market value.

Where a court tries a matter in equity without the aid of a jury, the admission of improper testimony not affecting the result can be properly disregarded on appeal. *Hazen v Elmendorf,* 365 Mich 624, 631; 113 NW2d 892 (1962). The Garlings appraisal cannot be disregarded, however, since the trial court utilized plaintiff's appraisal in calculating the respective equity interests of the parties in the marital residence. Plaintiff had an opportunity to hear defendant's evidence on the appraisal of the marital home and counteract it with her own substantially lower appraisal, without her appraiser being subjected to cross-examination.

The order of August 3, 1978, clearly directs the appointing of an independent appraiser to help in resolving the disputed value of the house.

In addition, that order provided that, upon fixing the price, the court would include in the judgment that the plaintiff shall buy defendant's interest in and remortgage the marital home in order to pay off the mortgage now held by defendant's parents. It should also be noted that plaintiff testified she wanted to purchase the home.

The ultimate objective in a divorce proceeding is

to achieve a fair and equitable distribution of property. The division of property in a divorce case is a matter addressed to the discretion of the trial court. *Johnson v Johnson,* 346 Mich 418; 78 NW2d 216 (1956), *Crane v Crane,* 17 Mich App 588; 170 NW2d 194 (1969), *Pinney v Pinney,* 47 Mich App 290; 209 NW2d 467 (1973), *lv den* 391 Mich 767 (1974), *Van Ommen v Van Ommen,* 25 Mich App 652; 181 NW2d 634 (1970), *inter alia.*

Since remand may already be necessary in light of the trial court's apparent efforts to appoint an independent appraiser and recalculate the fair market value of the house, the trial court's order of August 3, 1978, should further be pursued toward a goal of a fair and equitable disposition of the interest of the parties in the marital home. Accordingly, this matter is also remanded in order to effectuate those provisions of the August 3, 1978, order relating to appraisal and distribution of each party's equity in the marital home.

The remaining issue relates to the division of the household furniture and furnishings between the parties. The record indicates that the trial judge made efforts to have the parties agree between themselves on the disposition of the personal property. It would not seem that the difference in the values of the household furnishings received would warrant the cost of litigation over such property. While a legal ruling on this remaining question may be helpful in bringing about finality of this matter as well as giving guidance in the disposition of future litigation, it should not be interpreted as though we are encouraging litigation over pots and pans.

The authority of a trial court to divide marital property between the parties to a divorce arises out of MCL 552.19; MSA 25.99, which provides:

"Upon * * * a divorce from the bonds of matrimony or a judgment of separate maintenance, the court may make a further judgment for restoring to either party the whole, or such parts as it shall deem just and reasonable, of the real and personal estate that shall have come to either party by reason of the marriage, or for awarding to either party the value thereof, to be paid by either party in money."

In *Johnson v Johnson, supra,* 431, the Michigan Supreme Court held that:

"The division of property in a divorce action is not governed by any rigid rules or mathematical formula. Each case depends on the particular facts involved. * * *

"The portion of property awarded to each party depends upon all the equitable factors involved, including the following: source of property, contribution towards its acquisition, the years of married life, the needs of the parties, the earning ability and also the cause for divorce."

Similarly, in *Holbern v Holbern,* 91 Mich App 566, 569; 283 NW2d 800 (1979), this Court stated:

"Any determination as to * * * property division necessitates an examination of '(1) duration of the marriage, (2) contributions of the parties to the joint estate [sources of property], (3) age, (4) health, (5) station in life, (6) necessities and circumstances and (7) earning ability' of the parties. *Charlton v Charlton,* 397 Mich 84, 95, fn 5; 243 NW2d 261 (1976), see *Ross v Ross,* 24 Mich App 19; 179 NW2d 703 (1970), *Hoffman v Hoffman,* 9 Mich App 715; 158 NW2d 78 (1968)."

This Court will not reverse an award of property unless it is convinced that it would have reached a different result had it occupied the trial court's position. *Paul v Paul,* 362 Mich 43; 106 NW2d 384

(1960), *Simmons v Simmons,* 58 Mich App 480; 228 NW2d 432 (1975). The property award must be "fair in light of the overall financial circumstances of the parties". *McDermott v McDermott,* 84 Mich App 39, 41; 269 NW2d 299 (1978).

While conflicting evidence was submitted at trial, the court's finding that the bedroom set was a wedding gift to the parties was supported by the proofs. However, the court erred in ruling that all wedding gifts belonged to the wife as a matter of law.

The issue of ownership of wedding gifts appears to be a question of first impression in Michigan. Does it matter whether money or an object is given to the wife, or to the husband, or to both? Does it matter whether the money or object comes from the bride's side or the groom's side?[2] Authorities in this area are sparse. See Anno: *Rights in wedding presents as between spouses,* 75 ALR2d 1365, 1366, citing *Avnet v Avnet,* 204 Misc 760, 764-765; 124 NYS2d 517 (1953). The court in *Avnet* noted:

"* * * [O]nly Emily Post presumes to speak with confidence in this regard. (Post on Etiquette [1932 ed], p 322.) 'Wedding presents are all sent to the bride and are, *according to law, her personal property.'* (Italics ours.)

"It may be that in 'polite' society all wedding presents are sent to the bride and as Miss Post goes on to say: 'The bridegroom seldom receives presents. Even those who care about him in particular and have never met his bride, send their presents to her, unless they send two presents, one in courtesy to her and one in affection to him.'

"The fact is however that not all wedding guests have been trained in the niceties of 'polite' society and

[2] See *Avnet v Avnet,* 204 Misc 760; 124 NYS2d 517 (1953), cited *infra.*

unfortunately, many of them have never read Miss Post's book."

In *Kantor v Kantor,* 133 NJ Equity R 491; 33 A2d 110 (1943), there was evidence that household goods were purchased for approximately $1,200 by the husband and wife either before the marriage or shortly thereafter and paid for with money from a bank account in the name of the husband. The funds in the bank account consisted of $200 given by the wife to the husband, $700 given to the husband by one of the wife's parents, and $300 in wedding gifts from the relatives of both spouses. There was no evidence that the wife purchased any of the household goods with funds in her sole possession. In the divorce action, the trial court stated:

"The defendant does not testify that any of these moneys were given to her as her absolute property, but she says that she took the household goods from the home and considers them as belonging to her because she picked them out at the time of the purchase, and from the further fact that she contributed $200 toward the purchase price and that $700 came from her mother or father. She does not testify that anyone ever gave her, for her separate estate, either the household goods or the moneys which went into their purchase. Under these circumstances, the finding is justified that these household goods were community property, intended for the joint enjoyment of the husband and wife, and that they were tenants in common thereof." *Kantor, supra,* 495-496.

*Avnet v Avnet, supra,* involved an action in conversion by the plaintiff wife against the defendant husband to recover the value of furniture, household furnishings, and personal effects, including wedding gifts and property purchased with

cash wedding gifts, claimed by the wife to be her exclusive property. Both plaintiff and defendant testified that the bulk of the wedding gifts came from their respective "sides" of the family. No statement was made by either party that any of the donors attached any conditions or requests to their gifts. The plaintiff insisted as a matter of law that the items were her property because they were purchased with their own funds or gift monies; the defendant, on the other hand, argued that the purchases were made from gift money belonging as a matter of law to both parties. The court, in dismissing the complaint of the wife, held that:

"The time has come to say clearly that all wedding gifts whether from the bride's 'side' or from the groom's excepting such items which are particularly adaptable to the personal use of either spouse, and those gifts which are specifically and unequivocally 'earmarked' as intended exclusively for the one or the other of the spouses, commonly intended for general use in the household, are the joint property of both parties to the marriage. This reasoning should apply as well to the things of like use purchased with cash wedding gifts not otherwise 'earmarked.' " *Avnet, supra,* 768.

See also *Rapkin v Israel,* 88 Pa D & C 20; 4 Fiduciary R 57 (1953), where it was held that wedding gifts, unless of a personal nature, are to be treated as belonging to the husband and wife as tenants by the entireties.

In *Plohn v Plohn,* 206 Misc 969; 135 NYS2d 135 (1954), *modified on other grounds* 1 App Div 2d 824; 149 NYS2d 32 (1956), *reh & app den* 1 App Div 2d 885; 150 NYS2d 778 (1956), the plaintiff secured a judgment of separation from the husband and claimed that she was entitled to the household furniture and furnishings of the marital

home left there when she moved out of the residence. However, the trial court found that the furniture and furnishings were the joint property of the parties:

"As to the household furniture and furnishings claimed by plaintiff in her fourth cause of action, consisting of the furniture and furnishings of the marital home left there by plaintiff when she left, and now being used by defendant, who continues to reside in the apartment, I am of the opinion that the correct rule of law is that where a husband brings his own property to the marital home as furniture and furnishings thereof, and also where he buys such furniture and furnishings and places them in the home, and also where a wife brings her own property to the marital home as furniture and furnishings thereof, and also where she buys such furniture and furnishings and places them in the home, and also where relatives or friends give wedding presents of household furniture and furnishings, or of money with which such furniture and furnishings are purchased, the only inference which can be drawn, in the absence of affirmative evidence of a different intent, is that all the furniture and furnishings so supplied to the home are so supplied for the joint use, comfort and benefit of both husband and wife, and that neither spouse thereby acquires any title or ownership which entitled either to take the articles from the home or exclude the other spouse from joint use and benefit thereof." *Plohn, supra,* 974-975.

See also *Brenner v Legum,* 46 Misc 2d 552; 260 NYS2d 73 (1965), *Coppola v Coppola,* 18 App Div 2d 1004; 238 NYS2d 614 (1963), *Samson v Samson,* [1960] 1 All Eng 653; 75 ALR2d 1360.

The above cases stand for the proposition that no presumption as to ownership may be indulged in the case of wedding gifts and that not only must the expressed intention of the giver be taken into consideration, but the intention of the wedded

couple as well. In particular, gifts intended to furnish or adorn the marital residence should not be treated as personal gifts to either spouse, and in determining the ownership of such goods, consideration must be given to the origin of the gift and to the relationship of the donor to the husband or wife. Wedding gifts which are to be used and enjoyed jointly should be considered the same as property purchased by the husband and wife jointly. *Kantor, supra, Avnet, supra.*

Michigan statutory and case law supports the above conclusions. MCL 552.19; MSA 25.99, provides that upon dissolution of the marriage, the trial court may restore to either party the whole or such part as it shall deem just and reasonable of real and personal property that shall come to either party by reason of the marriage. Moreover, Michigan case law provides that, although the division of property need not be equal in a divorce action, it must be fair in light of the overall financial circumstances of the parties. *McDermott, supra,* 41. Therefore, we conclude that the rules announced in the above-cited cases should be applicable in Michigan, and, specifically, in the case at bar.

Additional support for this conclusion is garnered from the fact that no Michigan decisions directly on point are to be found, and only one case even hints that this question has been considered even obliquely in Michigan. In *Bloss v Bloss,* 187 Mich 425; 153 NW 666 (1915), a divorce case, the Court restored to the husband certain items of personal property given to the parties by friends and relatives of the husband. It is not clear from the Court's opinion if these items were wedding gifts or not. However, the list of property reveals items of personal use to the husband for the most part:

"One cigar band smoker set; three packs of cards; two glass humidors; one shaving glass; one steel fishing rod and reel; one ice-box; one dining room table; six dining room chairs; two fancy pillows; one set of eight books; one rocking chair; one poker set; one brass dish; and one brass cuspidor." *Bloss v Bloss, supra,* 429.

Items of personal use or adornment are not at issue in the instant case. The items in dispute are household furniture and furnishings and items of general household use.

We hold that the trial court was in error in ruling that all wedding gifts belonged to the plaintiff as a matter of law. The facts in another case may support a finding that the intent of a donor was that the wedding gift was to belong to a specific party. However, unless the wedding gifts are appropriate only for the personal use of one of the spouses, the gifts should be deemed the joint property of the parties, subject to division upon dissolution of the marriage, in the absence of a sufficient showing that the intent was that such nonpersonal gift be "earmarked" for either husband or wife.

The nature of the wedding gifts involved in the instant case is not clear. Defendant in his brief vaguely asserts that the items at issue are household furniture and furnishings, not items of personal adornment or use. Therefore, this matter is also remanded for further identification of the wedding gifts and their equitable distribution in accordance with the rules of law hereinbefore adopted on this issue.

This matter is remanded to the trial court for the purposes stated in this opinion. Upon remand the trial court is to hold a hearing and render its decision within 60 days of the release of this opinion. We do not retain jurisdiction. Defendant may assess costs.