**Johnson v. Johnson**

*Thomas E. Waters, Jr.*, for plaintiff.
*Ralph Michetti*, for defendant.

BRODY, *J.*, November 2, 1981 — In this case the court must address an issue that can be expected to arise frequently in litigation under the Divorce Code of 1980: the proper treatment of the distribution upon divorce of a marital residence purchased partially by the pre-marital funds of one spouse, and titled in the joint names of husband and wife.

In the divorce action before this court, both parties petitioned the court to determine the distribution of a jointly-owned marital residence. Located in Ithaca, New York, the house was purchased partially by funds brought into the marriage by one spouse. By stipulation, the distribution of this property was the only issue before the court.

## STATEMENT OF FACTS

1. Gwendolyn M. Johnson and Paul B. Johnson were married on November 20, 1971. Two children were born of the marriage: Gabriel, born December 15, 1972 and Lisa, born May 26, 1975.

2. Prior to marriage, Mrs. Johnson acquired from her family the following assets:

| | |
|---|---:|
| Debenture Bond Principal and Interest | $14,940.00 |
| Interest under Deed of Trust | 2,100.00 |
| Custodial Passbook Account | 4,871.21 |
| Total | $21,911.21 |

3. In May of 1973, the parties purchased a house in Enfield, New York, holding title as joint tenants.

4. The parties borrowed the down payment of $1,200 from Mr. Johnson's father. The remainder of the purchase price, $17,500, was paid from Mrs. Johnson's account.

5. In 1975, the parties sold the house for $28,000.

6. After repaying Mr. Johnson's father for the down payment and paying off other debts, the parties purchased a camper and camping equipment.

7. The parties then traveled for about seven months, camping in various parts of the United States.

8. Neither party worked during this period. They used the proceeds from the sale of the Enfield, New York, property for living expenses.

9. Later in 1975, the parties returned to New York and rented a house in Ithaca, New York.

10. In 1976, the parties purchased a duplex in Ithaca, New York, for $32,200. The down payment of $6,500 was from funds which remained from the sale of the Enfield house. Title again was joint.

11. Mortgage and escrow payments for this house are $307 monthly.

12. In 1979, the parties moved to Fort Washington, Pa.

13. The duplex in Ithaca is now listed for sale at $59,900; the mortgage balance as of July 31, 1981 was $23,892.87.

14. This house is the only asset considered for distribution.

15. Both parties were employed during the marriage. Mr. Johnson worked as a musician with various band groups. Mrs. Johnson worked as a waitress and as a hostess.

16. While the parties lived in Ithaca, one unit of the duplex was rented out for $225 monthly.

17. After the parties moved to Pennsylvania, both units were rented for a total of $550 monthly as of October 1979.

18. Mrs. Johnson handled getting new tenants and maintaining the house.

19. After the parties separated, Mrs. Johnson alone received the rental monies and managed the property. The rental money was partial fulfillment of Mr. Johnson's support obligation.

20. After the separation, Mr. Johnson went to school and was trained as an audio engineer. He is currently employed as a cook.

21. Mrs. Johnson is currently employed as a secretary.

22. Mrs. Johnson has continued to reside in Pennsylvania.

23. After the separation, Mr. Johnson moved to New York, returned to Pennsylvania, and then moved to Massachusetts.

## DISCUSSION

### (1) JURISDICTION

In resolving the economic incidents of divorce, the court must decide if it has jurisdiction over the distribution of real property located outside the Commonwealth of Pennsylvania.

Although the sole asset of the parties is a parcel of real estate located outside the boundaries of Pennsylvania, does this court have the power to order its distribution in the resolution of the economic incidents of the divorce? The court has personal jurisdiction over both parties. Mrs. Johnson filed the complaint in divorce and continues to reside in Pennsylvania. Although Mr. Johnson now resides

in Massachusetts, he made a general appearance by filing a responsive pleading, thereby submitting himself to jurisdiction of the court: Taylor v. Humble Oil and Refining Co., 221 Pa. Superior Ct. 394, 292 A. 2d 481 (1972); Jeannette Borough v. Roehme, 197 Pa. 230, 47 Atl. 283 (1899). Once personal jurisdiction has been established over the parties, the court has a power to order the parties to execute documents relating to the property although the court lacks in rem jurisdiction over the house itself: Whitmer v. Whitmer, 243 Pa. Superior Ct. 462, 365 A. 2d 1316 (1976) cert. den., 434 U.S. 822 (1977); Simon v. Simon, 478, F. Supp. 548 (1979).

### (2) CHOICE OF LAW

In Whitmer, supra, the Florida Court had personal jurisdiction over defendant husband and applied its law even though the property affected was in Pennsylvania. The Florida Court awarded the wife a lump-sum alimony and then attempted to transfer, by its order, the Pennsylvania property to the wife to fulfill the alimony award. Pennsylvania did not, at that time, allow alimony following a divorce A.V.M. The Pennsylvania Court refused to honor the transfer of property because the property was outside the jurisdiction of the Florida Court. The Pennsylvania Court noted that since the Florida Court had personal jurisdiction over the husband, it could order him to transfer the property. The Pennsylvania Court did not question the right of the Florida Court to apply Florida law on alimony and to fund the award with property located in Pennsylvania. Similarly, in the instant case, the court is applying Pennsylvania law on

equitable distribution of marital assets and funding the award with property located in New York.[1]

### (3) MARITAL PROPERTY

Once the court holds that it has the power to make a distribution over out-of-state property, it must thereafter determine what portion, if any, of the marital residence is marital property and what portion, if any, is excluded as separate property of either spouse. In the instant case, the court must deal with the fact that $6,500 of the initial down-payment of the house was directly attributable to the wife's pre-marital estate.

The Divorce Code of April 2, 1980, P.L. 63, 23 P.S. § 101 et seq. allows the court, upon request, to distribute marital property of the parties after considering all relevant factors.[2] The code is title blind,

---

1. See also Miller v. Miller, 441 N.Y.S. 2d 339 (1981); Brock v. Brock, Tex. Civ. App., 586 S.W. 2d 927 (1979); Matter of Marriage of Glaze, Tex. Civ. App., 605 S.W. 2d 721 (1980); and Schaheen v. Schaheen, 17 Mich. App. 147, 169 N.W.2d, 117 (1969).

2. 23 P.S. §401 Decree of Court Property Rights and Costs

(d) In a proceeding for divorce or annulment, the court shall, upon request of either party, equitably divide, distribute or assign the marital property between the parties without regard to marital misconduct in such proportions as the court deems just after considering all relevant factors including:

(1) The length of the marriage.

(2) Any prior marriage of either party.

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

(4) The contribution by one party to the education, training, or increased earning power of the other party.

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties, including but not limited to medical, retirement, insurance or other benefits.

and all property is presumed to be marital, except for certain carved-out exceptions. Property acquired in exhcange for property acquired prior to the marriage, except the inrease in value thereof, is excluded from marital property. Also excluded is property acquired by gift, except for the increase in value during the marriage.[3]

On the other hand, under Pennsylvania Gift Law, when one spouse places property brought into the marriage by that spouse into a joint tenancy after the marriage, a gift to the other is presumed: Butler v. Butler, 464 Pa. 522, 347 A. 2d 477 (1975). To determine the appropriate treatment of the $6,500

---

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as a homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

(10) The economic circumstances of each party at the time the division of property is to become effective.

3. 23 P.S. §401 Decree of Court Property Rights and Costs

(e) For purposes of this chapter only, "marital property" means all property acquired by either party during the marriage except:

(1) Property acquired in exchange for property acquired prior to the marriage except for the increase in value during the marriage.

. . .

(3) Property acquired by gift, bequest, devise or descent except for the increase in value during the marriage.

. . .

(f) All property, whether real or personal, acquired by either party during the marriage is presumed to be marital property regardless of whether title is held individually or by the parties in some form of co-ownership such as joint tenancy, tenancy in common or tenancy by the entirety. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection (e).

contributed to the purchase of the jointly-owned home by Mrs. Johnson the court should, if possible, reconcile the new Divorce Code with the previous gift law. In re. Peplinski's Estate, 155 Pa. Superior Ct. 564, 39 A. 2d 271 (1944).

The court could adopt the traceable assets approach followed in Sanger v. Sanger _____ Or. App. _____, 619 P. 2d 660 (1980). In that case, the wife at marriage owned a home with an equity interest of $23,000. During marriage, the title was transferred by her to a joint tenancy with her husband. On divorce, the husband shared only in the appreciation of the house; the $23,000 was regarded as the wife's separate property. Applied to the case at bar, the $6,500 for the proceeds of the sale of the house would be immediately distributed to Mrs. Johnson as her own separate property. Under the divorce code, it would be identified as an interest in property acquired in exchange for property acquired prior to marriage.

As a practical matter under this holding, the non-contributing spouse may be in a worse position under the 1980 code, which is intended to deal with the reality of matrimonial experience and to effectuate economic justice between the parties, than under the previous law.[4] The one spouse may provide a house for the couple and title it jointly. After many years of marriage and little appreciation in value, the non-contributing spouse may be entitled to very little of the value of the house on divorce. Under the prior law, one-half of the value of the

---

4. If the court were to use this approach, whether the property was a gift would be determined by the law in the state when the gift was made. New York law on this issue is the same as Pennsylvania: Secrist v. Secrist, 308 N.Y. 750, 125 N.E. 2d 107 (1955). However, the court rejected this approach for reasons which appear later in the opinion.

jointly-held house would have been the property of the non-contributing spouse as a gift. Butler, supra.

As an alternative, if the gift law approach were adopted, one-half of the $6,500 would be viewed as a gift from Mrs. Johnson to Mr. Johnson and thus, upon distribution, $3,250 would be given to each spouse as his or her own separate property.[5] Any inrease would be subject to equitable distribution as a marital property, but the court could not, in apportioning the increase between the spouses, consider the source of the funds used for the down payment; to do so would technically require an evaluation of the source of the funds used to purchase a separate property portion of the interest in the house and not upon the marital asset itself. This approach does not allow the spouse who has contributed his or her pre-marital property to receive the proper credit for such contribution.

A third and more tenable approach is to view the placing of the marital home in joint names as a gift to the marital entity. This perspective was adopted recently by the Supreme Courts of Maine and Illinois: Carter v. Carter, Me. 419 A. 2d 1018 (1980); In re Marriage of Rogers, 85 Ill. 2d 635, 422

---

5. 23 P.S. §102 Legislative findings and intent.

(a) The family is the basic unit in society and the protection and preservation of the family is of paramount public concern. Therefore, it is hereby declared to be the policy of the Commonwealth of Pennsylvania to:

(1) Make the law for legal dissolution of marriage effective for dealing with the realities of matrimonial experience.

. . .

(6) Effectuate economic justice between parties who are divorced or separated and grant or withhold alimony according to the actual need and ability to pay of the parties and insure a fair and just determination and settlement of their property rights.

N.E. 2d 635 (1981). In Carter the value of the marital home was contributed almost entirely by the husband although title was held jointly. The court rejected the husband's argument that the house, since it was originally his, was still his despite the joint title. The court also rejected the wife's claim that she was entitled to half the value of the house as a gift by virtue of the creation of the joint tenancy. The court held that the property was a marital asset and subject to equitable distribution, absent clear and convincing evidence to the contrary.[6] The court stated that gift exception to marital property had no application to a transfer during marriage from one spouse to both spouses jointly. Carter at 1022. The Illinois Court cited and followed the Carter decision. In the Illinois case, the parties divorced each other after a 23 year marriage. Their equity in their house was $68,000, which had come from the husband's inheritance. The court considered factors very similar to those enumerated in 23 P.S §401(d) and awarded the husband $20,000 and the wife the remainder.

Similarly in Darwish v. Darwish, 100 Mich. App. 758 300 N.W. 2d 399 (1980), the court held that wedding gifts should be considered the joint property of both spouses and subject to division upon dissolution of the marriage unless the item was only appropriate for the personal use of one spouse or unless there was a clear intent shown by the donor that the gift was earmarked for one spouse. Darwish, supra. p. 408. Wedding gifts and the marital home occupy a similar position among the assets of a married couple. Wedding gifts are given to help provide a couple with the means to establish

---

6. This view is consistent with Pennsylvania presumption that all property is marital unless excepted: 23 P.S. 401(e).

their own living unit. The gifts are only given because the couple is marrying. They are given for the joint enjoyment of the spouses. Similarly, the house a couple purchases to live in is puchased to provide a home for the marital entity, both spouses and children.

Concluding that placing the marital home in joint names creates a gift to the marital estate effects most closely the intent of the parties when they purchased their home as a family abode and at the same time, enables the court to carry out the intent of the new Divorce Code to effectuate justice between the parties. It also reconciles the new Divorce Code with the previous gift law. Equitable Distribution is not necessarily an equal distribution. Consideration of the factors listed in 23 P.S. §401(d) protects both the spouse who purchases a marital home with pre-marriage funds, titles it jointly, and is promptly divorced, as well as the spouse who during a long marriage lives in a jointly-held home purchased with the pre-marriage funds of the other spouse and is divorced. For that spouse it might be equitable to receive a greater proportion of the home than is attributable to his or her down payment from separate funds.

## (4) EQUITABLE DISTRIBUTION

The facts of this case must be examined with regard to the relevant factors listed in section 401(d) of the Divorce Code in order to determine an equitable distribution of the Ithaca house.

The parties have been married almost ten years. For five of these years, the parties lived in houses which were purchased in part with funds Mrs. Johnson brought into the marriage.

This was the first marriage for each party.

Mrs. Johnson is 29 and Mr. Johnson is 31 years old. Mrs. Johnson has worked as a waitress and hostess; she is currently employed as a secretary. Mr. Johnson, during the marriage, worked as a musician in various bands. Since the separation, he has been trained as an audio-engineer. He is currently working as a cook.

There was no testimony on the contribution of one party to the education of the other, their separate opportunities for acquiring capital assets or income in the future, their sources of income other than through their respective employment, or their current income.

Mrs. Johnson's funds purchased or provided the down-payment for the two houses the parties owned during the marriage. Both parties were employed during the marriage and shared the burdens of the household expenses, household maintenance, and child care. After the separation in 1979, Mrs. Johnson has had the sole responsibility for the mortgage, maintenance and supervision of the Ithaca house and has received all the rent monies.

There was no testimony on separate property of the parties.

The parties provided for themselves and their children through their employment during the marriage. Their standard of living was adequate but not luxurious. The proceeds from the only asset of the marriage will be insufficient to support either party for more than a short period of time. Each will need to be employed as during the marriage to sustain the same standard of living.

The economic circumstances of the parties are similar. Each is presently employed at jobs which provide moderate salaries. Having custody of the children may limit Mrs. Johnson's employment op-

portunities, since it may be difficult for her to work overtime, on weekends, or to travel.

Except for Mrs. Johnsons's contribution in the acquisition of the marital home, and, to some extent, its maintenance more recently, consideration of these factors essentially points to an equal division of marital assets. Both parties were employed during the marriage and shared in household responsibilities. Their future employment prospects seem similar.

However, section 401(d) allows the court to consider additional factors. It is important that Mrs. Johnson's funds enabled the parties to purchase two houses and to profit from the appreciation in housing values during the period. Mrs. Johnson during the marriage acquired assets from her family worth almost $22,000. All but $6,500 was spent during the course of the marriage. The $6,500 provided the down payment for the marital home, which is the only asset subject to equitable distribution. She is thus entitled to a larger share than Mr. Johnson.

## DECREE NISI

And now, November 2, 1981, after hearing, the court orders and directs that:

1. Gwendolyn M. Johnson and Paul. B. Johnson execute all documents necessary to list and sell the house and lot which are located at 112 West Yates Street, Ithaca, New York, and which the parties own jointly; and

2. The proceeds which remain after the mortgage, real estate broker's commission, transfer tax and other expenses connected with the sale have been paid shall be divided between the parties with 60 percent of such proceeds being Gwendolyn

Johnson's share and 40 percent of such proceeds being Paul Johnson's share.

Unless exceptions are filed hereto within ten days of service hereof, this decree shall become the final decree of the court as of course.