MILDRED AVNET, Plaintiff, v. EMANUEL AVNET, Defendant.

Municipal Court of the City of New York, Borough of Manhattan, September 15, 1953.

*Morris Berler* for plaintiff.

*Louis N. Forman* for defendant.

CHIMERA, J.   Plaintiff wife institutes this suit in conversion, against defendant husband, to recover the value of furniture, household furnishings and personal effects, claimed by the former to be her exclusive property.   The basis of her contention rests upon her story that she alone purchased the items in question from her own personal funds (with the exception of some $200 worth of linens admittedly brought into the household by the husband); that all wedding gifts were in cash and delivered to her personally almost entirely by friends and relatives on the bride's " side "; that they amounted to $1,000 approximately; that a goodly portion of this amount was spent on the honeymoon and the balance was absorbed by the husband in the purchase of personal items of clothing and other expenses.

All of plaintiff's important assertions are sharply contested by the defendant, particularly the amount of cash gifts and the source from which the money came.   Defendant husband claims that the total amount was closer to $2,400 and that most of it was given by friends and relatives on the groom's " side ".   Neither denies that the wife had the ultimate control of the funds or such of them as were left over after the honeymoon, and both agree that a substantial portion of the cash was

deposited in the wife's personal bank account and commingled with her own moneys. No statement is made by either party that any of the donors attached any conditions or requests to their gifts.

This is the pathetic and often repeated story of the bride who could not tear herself away from her parental domicile and of the groom who did little if anything to make her assume her proper place and responsibility in the new home. Their marriage has degenerated into a game of "who shall torture whom" and their child has become the tragic victim of their spite and malice. The game was started in some other tribunal and this court is only a stopping place on their weird journey.

Both counsel move for a directed verdict at the end of the case, the plaintiff contending as a matter of law that the chattels are the property of the wife because they were purchased with her own funds, or, in any event, if purchased by gift moneys, the gifts were the property of the bride and therefore the purchases were hers. The defendant on the other hand contends that the purchases were made from gift moneys as a matter of law belonging to both parties and that, in any event, the complaint must fall because plaintiff has failed to establish the value of the chattels at the time of the alleged conversion. On these motions the jury was discharged and decision was reserved by the court.

Ever since man came to abandon the nomadic life, settled in communities and divided the land so that each had his own property, he began to select his women and from that day to this marriage in some form or other has become an honored institution bringing with it myriad questions, moral and legal.

One would think that, after so many centuries of marital experience, all of the rights of the parties to a marriage will have been determined by some judicial tribunal and that at least the question who is entitled to possession of the household furniture and effects will have been settled by now, so clearly that many of the popular misconceptions of the day will have been avoided.

Prior to the enactment of chapter 200 of the Laws of 1848, chapter 90 of the Laws of 1860 and chapter 172 of the Laws of 1862 — (" Enabling Acts ") — the issue would have been simple of solution. Then a *femme covert* was little more than a chattel herself (juridically speaking) and everything she owned became the property of the privileged male, her spouse. Advancing civilization brought with it some refinements however, for even then the courts came gradually to the view that she should

be allowed exclusive possession of the things peculiarly adaptable to her own use — such things as her wearing apparel and other items of female adornment. Valuable jewelry however, even though given to her as a gift by the husband, continued to be his property and subject to distraint by his creditors. (*Whiton* v. *Snyder*, 88 N. Y. 299, 303.)

With the advent of the "Enabling Acts" woman became free to own her own property and from that day to this the popular misconceptions above-referred to, have come into being. Lawyers and laymen alike have been heard to say at one time or another, that household furniture and effects are presumed to be the property of the husband, the property of the wife, and then again the property of both jointly, this without regard to who purchased it or who brought it into the marital domicile.

One thing is clear and that is that no presumption in law exists as to the ownership of such items used in common by husband and wife where they were purchased with the funds of the husband or the wife or with the funds of both of them. In each case title depends on the facts.

Except for articles adapted plainly to the wife's separate and personal use, and so actually used by her, such as wearing apparel and/or ornaments (even though given to her by her husband), all "articles of a different character, such as furniture and household goods, adapted to the use of and used by the family generally, and in their common possession, a different rule must apply." (*Whiton* v. *Snyder, supra*, p. 305.)

Implicit in this decision, title must be proven either by conclusive evidence of sale or of gift and no presumption obtains.

In *Tyrrell* v. *York* (57 Hun 292), the controversy involved furniture formerly owned by the husband and brought by him into the marital domicile. It was there held that when husband and wife are living together under these circumstances, an executed gift may not be proven by mere evidence of possession where there was nothing to show her possession beyond ordinary family use. Here again, no presumption of ownership was indulged in, in favor of the wife. Vice versa — the simple appropriation of any portion of her personal property to household use by the husband and wife, or the husband alone, even with her consent, was held not to render it the property of the husband. (*Fitch* v. *Rathbun*, 61 N. Y. 579.)

*Matter of Spingarn* (111 N. Y. S. 2d 173) is an interesting case. This case clearly indicates that there is no presumption of ownership of household furniture in the wife and if a gift is claimed, title must rest upon clear proof of delivery and

acceptance. The case concerned household furniture in an apartment and in a farmhouse part of which was the husband's before the wife came into the picture. Sufficient proof of gift of the apartment furniture within the meaning of the law was predicated upon the following facts: 1. Declaration by the husband. 2. Exercise of control and dominion by the wife. 3. Active participation by the husband in a sale by the wife, and 4. transfer by the husband of the fire policies on the furniture from his name to that of his wife. The ruling was against the wife in connection with the farm furnishings, evidence of acts of dominion and of delivery not having been proven to the satisfaction of the Surrogate.

*Tassell* v. *Tassell* (N. Y. L. J., March 5, 1947, p. 883, col. 1) is a case where among other things a trust was sought to be impressed on furniture and household effects. The court found as a fact that the chattels were purchased with the wife's exclusive funds and ruled that no trust expressed or implied existed in favor of the husband.

All of the foregoing is true in spite of the tendency of the Legislature in recent years to reserve to the surviving spouse an inalienable quantum of household effects (Surrogate's Ct. Act, § 200), and rightly so, for the rules that apply to the disposition of decedent's estates are grounded on considerations other than the facts of title or gift to be gleaned from the conduct and acts of the living.

But what of household goods and furniture purchased with money wedding gifts or which came as gifts in kind? Does it make a difference whether the money or the object itself was delivered into the hands of the bride or of the groom — whether it came from the bride's " side " or from the groom's " side ". This is the most intriguing question which this court is called upon to answer.

The authorities which I am called upon to examine are few and elusive to put it mildly. Indeed I find that only Emily Post presumes to speak with confidence in this regard. (Post on Etiquette [1932 ed.], p. 322.) " Wedding presents are all sent to the bride, and are, *according to law, her personal property*." (Italics ours.)

It may be that in " polite " society all wedding presents are sent to the bride and as Miss Post goes on to say: " The bridegroom seldom receives presents. Even those who care about him in particular and have never met his bride, send their presents to her, unless they send two presents, one in courtesy to her and one in affection to him."

The fact is however that not all wedding guests have been trained in the niceties of " polite " society and unfortunately, many of them have never read Miss Post's book.

More than that — there is a tendency to give money instead of things these days and in the average wedding, it is not unusual for each " side " to deliver the money gift into the hands of its own.

While no one will challenge Miss Post's eminence as an arbiter of good taste, I doubt that her pronouncement on the law in this regard may be accorded the dignity of *stare decisis*. It would have been nice had she cited a competent judicial decision of such sweeping magnitude. Had she done so there would be no need for this opinion.

These then are the authorities that must be examined:

Except for *Wainess* v. *Jenkins* (110 Misc. 21), which will be later discussed, *Ilgenfritz* v. *Ilgenfritz* (49 Mo. App. 127) is the only decision submitted to this court which appears to hold that wedding gifts are the property of the wife. But as Surrogate WINGATE properly pointed out in *Matter of McNamara* (138 Misc. 526, 532), that authority " is impaired by reason of its apparent reliance upon the particular terms of the Missouri Statute ". Moreover, this decision is of foreign jurisdiction and not binding on this court.

Directly contra is the holding of *Carroll* v. *Lee* (3 Gill & John's [Md.] 504), which holds that wedding gifts are the property of the husband in the absence of a clear showing of intent by donor to the contrary. Here, too, as Surrogate WINGATE said in " *McNamara* " (*supra*), the present day authority of this holding must be doubted since the " opinion seems so permeated with the older conception of the wife's disability ". (Referring to the rights of the husband prior to the enactment of the " Enabling Acts.")

Plaintiff relies heavily on " *Wainess* " (*supra*). That was a case influenced by the dictum in the " *Ilgenfritz* " decision (*supra*). There it was held by the learned Justice that furniture etc., purchased by a woman with money given her personally by her mother and sister as a wedding gift, even though expected to be used by the husband and wife, was the wife's personal property nevertheless. In effect the court found as a fact that it was the intention of the donors that the gift was to be the sole property of the wife in the event that the marriage would ultimately be broken. Although I find it difficult to believe that anyone making a wedding gift ever gives any thought to the possibility of a broken marriage, the conclusion

of that court on the facts found must be accepted, as he was the sole judge of the facts.

I cannot and do not agree however with the sweeping dictum in that opinion to the effect that " if a gift be made to a bride-to-be, or to a married woman, from whomever or from whencever it may come, it is hers absolutely, without any valid claim thereto by any other person whatsoever."

Donors send wedding gifts to the bride for one of three reasons: (1) Because they wish the gift to be the exclusive property of the bride in which case the character of the gift may be a clue to the intention, or the intention must be otherwise unequivocally expressed; (2) because as Miss Post says (*supra*), etiquette dictates that " wedding presents are all sent to the bride "; and finally (3) because by indicating the bride-to-be's residence on the invitation notices, the donor is politely told where to send the gift.

Whom to give the gift is dictated by custom and usage but title to the thing itself must rest on the intention of the donor and sometimes on the receivers themselves.

*Matter of McNamara* (*supra*), is memorable for Surrogate WINGATE's commentary on the three last-mentioned citations and for its holding that a diamond ring given decedent by her husband was unquestionably a part of her estate. It sheds little light otherwise on the question who is the owner of wedding gifts.

*Schulman* v. *Schulman* (N. Y. L. J., Dec. 13, 1951, p. 1634, col. 1.) This was an action by a husband for conversion, by the wife, of funds on deposit in a joint savings account, with a counterclaim by the wife for the value of a half interest in an automobile purchased with money from the account in question. Here the court dismissed both the complaint and counterclaim, saying: " This account was created with funds supplied by the plaintiff and the defendant and from *wedding gifts.* * * * It is impossible to determine how much each put into this bank account.*" (Emphasis supplied.) Certainly, if nothing else, the amount of the cash wedding gifts could have been determined. Implicit in this determination no presumption of single ownership in either party was indulged in by the court as regarded the wedding gift feature of the case.

*Falk* v. *Falk* (N. Y. L. J., March 15, 1947, p. 1036, col. 1.) Here too the ownership of household furniture was in issue. The court found as facts that a wedding gift of $10,000 given by the bride's parents was given to both; that the funds of both went into the purchase of the real estate and the furniture,

and that the parties intended that the property and furniture be jointly owned. This ruling was made in spite of the fact that the husband was a young doctor and the court was "not unmindful of the practice among Jewish people (the litigants are Jews) for the bride's parents to bestow a dowry upon the groom." This is but another example of the application of the rule that no presumption as to ownership may be indulged in the case of wedding gifts and that not only the expressed intention of the giver must be taken into consideration but the intention of the wedded couple as well.

One or the other of counsel for the parties has offered this court citations other than those already considered. They have none but remote application to the facts at bar. But to the extent that they deal with other aspects of property rights as between spouses, they have a value in this opinion, if only to place in true perspective certain other popular misconceptions affecting joint and trust bank accounts, and title to the contents of safe deposit boxes held in the joint names of husband and wife.

No clearer statement could have been made on the law as it affects joint bank accounts than that appearing in *Marrow* v. *Moskowitz* (255 N. Y. 219, 221): "When a bank account is opened in the form prescribed by statute (Banking Law, § 249, subd. 3), a presumption at once arises that the interest of the depositors is that of joint tenants. Upon the death of one of the depositors, this presumption becomes conclusive in favor of the survivor in respect of any moneys *then* left in the account. *It continues to be a mere presumption in respect of any moneys previously withdrawn.*" (Emphasis supplied.) So that it would seem that even a joint account is not conclusive on the question of ownership during the life of the depositors named.

With regard to ownership of the contents of a safety deposit box held in the joint name of husband and wife, it was held in *Matter of Squibb* (95 Misc. 475, 476) that the commingling of securities originally separately owned, raises no presumption of gift or ownership in the survivor. They hold as tenants in common and not as joint tenants. If gift is claimed it must be proven by delivery and acceptance. The court there ruled that even though husband put on an envelope containing his bonds found in the said box, the legend: "' Life insurance bonds, property of Mrs. E. H. Squibb'.", no presumption of ownership in the wife existed.

Surrogate HENDERSON in *Matter of Braun* (194 Misc. 791), held that the intention of the parties was controlling and that by giving his wife legal title to his money and permitting her to deposit it in a savings account in her name in trust for him, the husband clearly intended a *joint account* — survivor takes all. Here again, no presumption was indulged in by the court. The issue of title was decided on the facts of the case.

Coming back to the facts and issues at bar — these are my findings:

I am convinced that neither side told the full truth; that everything, except the personal effects of the wife and some $200 worth of linens was purchased with the wedding gift moneys which were sufficient to cover the entire cost even after the honeymoon expenditures; that plaintiff has failed in her burden of proof to satisfy me by a fair preponderance of the credible evidence that the money wedding gifts amounted to as little as she claims or that they came entirely from the bride's " side ". Moreover I find no specific proof that any such gifts came " earmarked " to be the exclusive property of the bride. Finally, there is no evidence of value as to the plaintiff's personal effects and indeed, no clue to what they consisted of. Consequently, I am in no position to fasten a figure on any judgment which she may have been entitled to recover in that connection.

Accordingly, the complaint must be dismissed on the merits as to every item except the personal effects of the plaintiff, and dismissed as to those without prejudice to a new suit upon proper proof of value. Plaintiff's remedy is elsewhere but certainly not on the theory of conversion, except in the case of her personal effects.

In passing I might say that more so than in any other period in the long history of mankind, this is the age of " 50–50 " marriages. The time has come to say clearly that all wedding gifts whether from the bride's " side " or from the groom's excepting such items which are perculiary adaptable to the personal use of either spouse, and those gifts which are specifically and unequivocally " earmarked " as intended exclusively for the one or the other of the spouses, commonly intended for general use in the household, are the joint property of both parties to the marriage. This reasoning should apply as well to the things of like use purchased with cash wedding gifts not otherwise " earmarked ".