Joseph A. Cox, S.
The executor, who is the sole legatee under his mother’s will, procured a discovery order (Surrogate’s Ct. Act, § 205) upon a petition in which he sought, in addition to other relief, the discovery of certain tangible personal property which had comprised household furnishings in the apartment occupied by the testatrix and the respondent. The respondent, the surviving husband of the testatrix and the father of the executor, filed an answer asserting ownership of this personal property. The petition in discovery also sought information as *982 to the occupancies and rentals in an apartment building owned by a corporation of which the testatrix was the record holder of 50% of the stock. The answer of the respondent in the discovery proceeding raises no triable issue in this respect.
Subsequent to the institution of the discovery proceeding the decedent’s husband instituted a proceeding pursuant to section 206-a of the Surrogate’s Court Act to compel delivery of a stock certificate issued by the real estate corporation in testatrix’ name and to compel delivery of certain promissory notes issued by the corporation and payable to the testatrix. The executor answered and claimed ownership of the stock certificate and the notes. A trial of the issues joined by the pleadings in both proceedings has been had.
It has been recognized that there are lacking definitive rules pertaining to a ready solution of problems between husbands and wives as to the ownership of household furnishings for, as recently as 1953, the following somewhat rueful comment was made:
“ Ever since man came to abandon the nomadic life, settled in communities and divided the land so that each had his own property, he began to select his women and from that day to this marriage in some form or other has become an honored institution bringing with it myriad questions, moral and legal.
“ One would think that, after so many centuries of marital experience, all of the rights of the parties to a marriage will have been determined by some judicial tribunal and that at least the question who is entitled to possession of the household furniture and effects will have been settled by now, so clearly that many of the popular misconceptions of the day will have been avoided.” (Avnet v. Avnet, 204 Misc. 760, 762.)
The same court concluded (p. 763): “ One thing is clear and that is that no presumption in law exists as to the ownership of such items used in common by husband and wife where they were purchased with the funds of the husband or the wife or with the funds of both of them. In each case title depends on the facts.”
An early decision which considered the background of the disability of coverture and the later enabling statutes is Whiton v. Snyder (88 N. Y. 299, 304-305) and there the court said: “ Now that those disabilities are removed, the several existence and separate property of the wife recognized, and her capacity to take and hold as her own a gift in good faith and fairly made to her by her husband established, it seems time to clothe her right with its natural and proper attributes, and apply to a gift to her, although made by her husband, the general rules of *983 law unmodified and unwarped by the old disabilities of the marriage relation. Since the wife may take by gift from her husband as well as from others, and by purchase from any one, her separate and personal possession of specific articles must draw after it the presumption of ownership, and there is no longer reason for making her case exceptional, or excluding her from the operation of the general rule. Her wearing apparel and ornaments, given by her husband, pass into her personal and separate possession. Such is the intent with which they are given. They are made or selected with that view and for that plain purpose; their very character and use implies a personal gift, and a separate possession in which the husband does not share. Such possession of articles adapted plainly to the wife’s separate and personal use, and not that of the husband or family generally, and so actually used by her, in the absence of other facts contradicting the inference, must be held to denote her ownership of the property, either as purchased out of her own means, or given to her by her husband or others. As to articles of a different character, such as furniture and household goods, adapted to the use of and used by the family generally, and in their common possession, a different rule must apply. Although specific articles may be spoken of as the wife’s, or as got for her, the difficulty of establishing an executed gift by showing a delivery, or a separate and personal possession, remains. Such cases must stand upon their facts, and can rarely be brought within the range of a presumption of separate ownership.”
In the case at bar there was proof that the husband had purchased certain of the household articles in dispute, viz., a turquoise dinner set, royal blue Minton dishes, a sterling silver tea set and a sterling silver tray and, as to these articles, there is a clear basis for considering initial ownership to be in the husband. There is some question as to the identification of the silver tray, purchased by the husband, as the one in question and there is the further fact that the tray in dispute bears the monogram of the testatrix. It would appear that as to this item, if it was purchased by the husband, a gift to his wife may be presumed. This presumption also applies ■ to the silver candlesticks which are also engraved with her initials. It is recognized that the arbiters of the social graces suggest that wedding gifts, irrespective of the intended recipient, be sent to the bride and be engraved with her monogram and this conformity with the niceties could confuse the issue of ownership (Avnet v. Avnet, supra, pp. 764-765) but here the inscriptions were placed on the articles years after the wedding ceremony *984 and the husband’s acquiescence therein is to be regarded as acknowledgment on his part of his wife’s ownership. Other articles in dispute are described as a royal blue Tuscan tea set and Minton lamps and, although it has been said that a respondent claiming title in discovery has the burden of establishing that fact (Matter of Rabinowitz, 5 Misc 2d 803 and authorities there cited), this court interprets such decisions as applicable to a claim of title derived from the decedent by sale, gift or other transfer and as inapplicable to a situation where the respondent in discovery claims an ownership not derived from the decedent. Lacking any presumption of separate ownership (Whiton v. Snyder, supra), it is held that as to the articles not shown to have been purchased by the husband there is no basis for a finding that they are assets of the estate. “ [E]very person seeking to recover property must recover on the strength of his or her title, and not on the weakness of the title of the defendant being sued ” (Plohn v. Plohn, 206 Misc. 969, 976). Accordingly, it is held that the respondent in discovery will be directed to turn over all those articles of tangible personal property which bear the monogram of the testatrix.
The proof respecting the stock certificate was that it was issued to the testatrix for a stated consideration, that dividends were paid to her and that the certificate was kept in a safe to which both the testatrix and her husband had access. There was testimony, by the testatrix’ brother, that upon issuance of the certificate it was indorsed by the testatrix and delivered to her husband. There also was evidence that a like certificate issued to the husband was indorsed in blank by him and this also was kept in the family safe. It is possible that delivery to a stranger of a stock certificate indorsed in blank can constitute a transfer of title (Personal Property Law, § 162) but in the circumstances here existing, coupled with the deposit of the certificates of both husband and wife in a common place of safekeeping and the further fact that during the ensuing years no attempt was made to effectuate a change upon the corporate records, it cannot be said that delivery was intended to accomplish any transfer of ownership. It is most significant that the dividends on the stock were reported by the testatrix in her income tax return and that this was done with the acquiescence of her husband.
The facts representing the promissory notes parallel those pertaining to the stock certificate and the interest on these notes also was reported by the testatrix as taxable income. While it is contended that the testatrix was without funds to make these investments the fact is that she had moneys available to her *985 in her own name and joint accounts which she maintained with her husband and, for present purposes, it is of no consequence that the deposits in the joint bank accounts may have been derived from the husband’s business. If the husband chose to create joint bank accounts and to give his wife the power of withdrawal it is to be assumed, in the absence of contrary proof, that the moneys on deposit were available to her.
The conclusion to be reached on all of the facts is that the testatrix and her husband had some misconception that the indorsements of the stock certificates would operate upon the death of one to pass title to the survivor while retaining in each individual full control of the certificate during his or her lifetime. There is here no proof of inter vivos gift and it is apparent that, lacking any prognostic power as to survival, the parties to the marriage intended no immediately effective gift. Their plan of extratestamentary disposition of both the stock and the notes failed not only because of legal inadequacies but because of the friction which unfortunately developed between father and son after the death of testatrix.
It is held that the husband has failed to establish that the title of the decedent in either the stock certificate or the notes was merely nominal in nature and that he is the rightful owner (Matter of Zuckerman, 8 Misc 2d 57; Matter of Gardner, 173 Misc. 202). Ownership of the certificate and the notes is held to be in the estate.