1416

Nicholas J. PAPPAS, Jr., Appellant v. Angela M. C. PAPPAS, Respondent.
(386 S. E. (2d) 301)

Court of Appeals

*James T. McLaren* and *C. Dixon Lee,* both of *McLaren & Lee,* Columbia, *for appellant.*

*Howard S. Sheftman,* of *Finkel, Georgaklis, Goldberg, Sheftman & Korn,* Columbia, *for respondent.*

Heard Oct. 17, 1989.

Decided Nov. 13, 1989.

BELL, Justice:

This is a divorce action. The only contested issue is the equitable distribution of a sterling silver service set. Nicholas J. Pappas, Jr., sought to have the silver declared marital property and apportioned between him and his former wife, Angela M. C. Pappas. Mrs. Pappas asserted the silver is her separate property. The family court found for Mrs. Pappas. Dr. Pappas appeals. We affirm.

In January of 1978, Dr. and Mrs. Pappas were engaged to be married. Mrs. Pappas, with her mother and grandmother, selected the pattern for the silver at the Chicago Watch and Jewelry Company. The grandmother then purchased the silver and had it sent to the home of Mrs. Pappas's mother in successive deliveries. All pieces were delivered by May of 1978. The silver was displayed in the mother's home with other antenuptial gifts. Mrs. Pappas listed the silver in a wedding album where she recorded all gifts.

Dr. and Mrs. Pappas were married in September of 1978. In December of 1978 Dr. Pappas had the silver appraised for insurance purposes. In February of 1979, he obtained a rider for the silver on a personal property insurance policy issued in his name alone. Premiums for this policy were paid with marital funds.

Upon their separation in May of 1987, Dr. and Mrs. Pappas divided all personal property, except the silver, by agreement approved by the family court. This agreement provided that all marital personal property would be divided equally between the parties and that the parties would retain all nonmarital property belonging to them. When the parties failed to agree about the silver, Dr. Pappas petitioned the family court to distribute it as marital property.

I.

Marital property is "... all real and personal property which has been acquired by the parties *during* the marriage ..."[1] Because antenuptial gifts are acquired before the marriage, they are not marital property within the meaning of the statute. However, an antenuptial gift may be either a joint gift given to both parties or a separate gift given to one party. If it is a joint gift, then the parties hold joint title and the property is presumably transmuted into marital property upon marriage. If it is a separate gift, the property is not subject to equitable apportionment unless it, too, is transmuted. The question of whether a gift is joint or separate is resolved by ascertaining the intent of the donor. *See Johnson v. Herrin,* 272 S. C. 224, 250 S. E. (2d) 334 (1978); *Berry v. Berry,* 290 S. C. 351, 350 S. E. (2d) 398 (Ct. App. 1986), *aff'd,* 294 S. C. 334, 364 S. E. (2d) 463 (1988); *Samson v. Samson* [1960] 1 All E.R. 653.

The evidence presented in this case does not clearly establish the donor's intent. Mrs. Pappas testified that her grandmother, now deceased, gave her the silver because she wanted to do something special for Mrs. Pappas. She testified that her grandmother intended the silver to be a personal gift which she could pass down as an heirloom to her children. Dr. Pappas testified that the silver was given jointly to him and Mrs. Pappas by the grandmother. He testified that the silver was presented to the two of them with a traditional Greek blessing[2] which indicates the giving of a gift. This conflicting testimony is, by its nature, self serving.

The objective evidence is equally inconclusive. Mrs. Pappas relies on delivery of the silver to show she alone was the intended donee. The physical delivery of the silver is ambiguous evidence at best. The silver was delivered to the mother's home as were most of the wedding gifts, including those from Dr. Pappas's family. The mother was admittedly not the donee. Without other evidence, delivery to her can with equal consistency be viewed as a constructive delivery

---

[1] Section 20-7-473, Code of Laws of South Carolina, 1976, as amended [emphasis added].

[2] "Kala Stephana Paithia Mou"

to the bride *and* groom or to the bride alone. Dr. Pappas emphasizes the silver was displayed with the antenuptial gifts and is pictured in a photograph of the gifts. The other silver was also listed in a wedding album where all the gifts were recorded. These facts, like the evidenc⌐ of delivery, are inconclusive. It is natural that all wedding gifts, whether joint or separate, would be displayed and listed together.

In domestic litigation, where the donor's intent is proved primarily by testimony of the parties, the desire of each party to obtain the property fosters conflicting evidence presented by self interested witnesses. Rarely will the donor's intent be clearly established. The family court is then reduced to deciding the question on the credibility of the parties unless an additional rule is adopted.

If the donor's intent is not clear, there are two approaches for determining the ownership of antenuptial gifts. One is to consider the nature of the property itself. Under this approach, all wedding gifts commonly intended for general use in the household are the joint property of both parties to the marriage. On the other hand, if the property is peculiarly for the personal use or adornment of either spouse, the property is a separate gift to the party who would naturally use it. *Avnet v. Avnet,* 204 Misc. 760, 124 N.Y.S. (2d) 517 (1953); *see also Darwish v. Darwish,* 100 Mich. App. 758, 300 N.W. (2d) 399 (1980). For example, a set of silver collar stays would go to the husband, while a jeweled necklace would go to the wife. This is the New York rule. The second approach is to consider the source of the gift. If money or gifts in kind come from the family or friends of one party, the gift is the separate property of that party. *Samson v. Samson* [1960] 1 All E.R. 653. This is the English rule.

Our Supreme Court has not yet adopted a rule regarding antenuptial gifts. In our judgment, the English rule is the better rule.

The New York rule, which looks to the character of the property, will lead to the correct result in many cases. However, it may frustrate the intent of the donor in some instances. For example, if a father gives a set of crystal liquor decanters which he intends for his son alone, but fails to express his intent, the New York rule would treat it as a

joint gift because it is a household furnishing. The donor's true intention would be defeated.

Under the English rule, the donor is presumed to have given the gift to the party to whom he is more closely related. The rule rests on an objective fact, easily and reliably proven without raising issues of witness credibility. In most cases, the rule will carry out the actual intent of the donor. It more closely parallels the South Carolina law that inherited property and third party gifts are separate property. *See Anderson v. Anderson,* 282 S. C. 162, 318 S. E. (2d) 566 (1984); *Barr v. Barr,* 287 S. C. 13, 336 S. E. (2d) 481 (Ct. App. 1985). It better effectuates the donor's intent if heirloom property is involved. Finally, if the donor is called to rebut the presumption, the English rule places him in the position of testifying against the interest of the party he would normally favor, making him more credible. Under the New York rule, the donor called to rebut the presumption is in the position of giving testimony biased in favor of a relative or friend, which is less credible.

In summary, in determining the character of disputed antenuptial gifts, the family court should first consider all of the evidence relevant to the donor's intent. If the donor's intent is apparent from the clear preponderance of the evidence, his intent controls. If, however, the evidence as a whole is inconclusive, then the court should apply the English rule.

Since there is not clear evidence of intent in this case, we apply the English rule. The silver, with the exception of two pieces,[3] was given by Mrs. Pappas's grandmother. Therefore, the gift was a separate gift to Mrs. Pappas.

## II.

In the alternative, Dr. Pappas argues that the silver was transmuted into marital property. Transmutation is also a matter of intent to be determined from the facts of each case. Property, nonmarital at the time of its acquisition, may be transmuted if it is utilized by the

---

[3] Uncontradicted evidence through exhibits at trial establish that only a pickle fork and teaspoon were given by Dr. Pappas's family. Counsel for Mrs. Pappas at oral argument conceded that these items belonged to Dr. Pappas.

parties in support of the marriage so as to evidence an intent by the parties to make it marital property. *Johnson v. Johnson,* 296 S. C. 289, 372 S. E. (2d) 107 (Ct. App. 1988), *cert. denied,* 298 S. C. 117, 378 S. E. (2d) 445 (1989). The burden of proving transmutation is on the party asserting it. *Id.*

Dr. Pappas claims to have proven transmutation by evidence that (1) Mrs. Pappas used the silver for family purposes during the marriage and (2) the silver was insured on his policy of insurance along with other personal property of the marriage. Mrs. Pappas did testify that she used the silver for family purposes on special occasions and holidays. This alone does not prove that she intended the silver to become marital property. By its very nature, a silver service is something that will be used by the whole family, not one person. Using it in the normal fashion is not in itself evidence of an intent to make it marital property. Similarly, it is quite natural that the silver would be insured under the same policy as other household personal property. It is hardly extraordinary that items the parties bring into the marriage, such as her personal jewelry or his personal gun collection, would be listed with marital property on a schedule of insured household personal property. Insuring such property under one policy does not show an intent to transmute.

### III.

Dr. Pappas's remaining argument is that the family court erred in admitting certain affidavits into evidence. We have ignored these affidavits. There was sufficient evidence without the affidavits to support the judgment of the family court. Therefore, any error in admitting them was harmless. *State ex rel. Medlock, v. Nest Egg Society Today, Inc.,* 290 S. C. 124, 348 S. E. (2d) 381 (Ct. App. 1986).

Affirmed.

SANDERS, C. J., and SHAW, J., concur.