THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Dorothy J. Mabe,       
Respondent,
 
 
 

v.

 
 
 
Larry Mabe,       
Appellant.
 
 
 

Appeal From York County
Jane D. Fender, Family Court Judge
Brooks P. Goldsmith, Family Court Judge

Unpublished Opinion No. 2005-UP-294
Submitted April 1, 2005  Filed April 25, 2005

AFFIRMED

 
 
 
Thomas F. McDow, of Rock Hill, for Appellant.
Richard G. DAgostino, of York, for Respondent.
 
 
 

PER CURIAM: In this divorce action, Larry Mabe (Husband) appeals the inclusion of certain assets in the marital estate, the apportionment of the marital property, the grant of alimony to Dorothy Mabe (Wife), and the award of attorneys fees to Wife.  We affirm.[1] 
FACTS
Husband and Wife were married in 1983 and separated in 2000.  Both parties had been married previously.  Wife was 65 years old and Husband was 62 at the time of trial.  Both parties are currently disabled and on fixed incomes.  Husbands gross monthly income is $1,302.00 and Wifes gross monthly income is $559.00.  They do not have any children together. 
At the time of the marriage, Wife owned a 1979 Pontiac Sunbird and some clothes.  About a year later, Wife received approximately $17,000.00 from the sale of the marital home from her first marriage.  Wife invested the money in annuities and listed Husband as the beneficiary.  
Husband and Wife moved into a house Husband owned in Clover, South Carolina.  At the time of the marriage, Husband also owned real property in Belmont, North Carolina, and York County, South Carolina, as well as several vehicles, a 401-K pension plan, and a tax-deferred savings plan through his employer, General Electric.  
After Wife received the sales proceeds from her former home, the parties signed an Agreement regarding their property.  The agreement recited that their respective assets were separately owned and stated that their agreement now is that whats hers will be hers, and whats his will continue to be his.  Although both parties signed the agreement voluntarily, neither party sought independent legal advice and a single attorney prepared the document.  
The couple subsequently moved to a home Husband owned debt-free in Belmont, North Carolina.  They renovated the home, and Wife helped with painting, putting up paneling, and installing insulation.  Wife also worked in the yard.  Husband was the primary wage earner, bringing in 91.32 per cent of the couples income during the course of the marriage.  
Husband eventually sold everything except a 1977 Ford Truck, a 1969 Chevrolet Nova, and an acre of land with a garage on it.  Husband and Wife had a joint checking account together.  When Husband sold one of his properties, he deposited the proceeds into the joint checking account and he and Wife enjoyed the money together.  When the parties sold the marital home in Belmont, they used the proceeds, along with the proceeds of several other investments, on a truck and camper.  The couple lived in the camper and traveled together.  The camper was titled in Husbands name, but Wife believed the parties owned it together.  
Later, Husband and Wife returned to Clover, where they built a garage apartment.  Wife helped with the construction.  The parties lost most of their assets through bad investments.  They also spent some of the money.  
Husband left Wife one day while she was at church.  Husband took the truck and camper, leaving Wife with only her car.  Wife was forced to go live with her daughter.  Husband allowed Wife to retrieve her personal belongings from the camper thirty days later with a police escort.  Husband later changed the locks.  Husband testified he left because Wifes daughter was addicted to drugs and sometimes homeless or in prison for extended periods, obligating Wife and Husband to care for Wifes daughter and her children.  
After Husband left, Wife filed for divorce.  Husband refused to accept service, and subsequently served divorce papers on Wife from Tennessee.  Wife hired an attorney in Tennessee and incurred $660.00 in attorneys fees to obtain a dismissal of that action.  Husband then filed an answer and counterclaim to Wifes action.  
The family court issued a temporary order in which Husband was ordered to pay $350.00 per month for spousal support.  Husband subsequently dropped insurance coverage on the camper, and the camper was apparently stolen shortly thereafter.  Husband then went to live in the garage apartment. 
After a trial on the merits, the family court issued an order granting the divorce and awarding $250.00 per month in permanent periodic alimony to Wife, making an equitable distribution of the marital property, and awarding Wife $4,500.00 in attorneys fees.  This appeal followed. 
LAW/ANALYSIS
1.  Husband argues the agreement he and Wife signed shortly after they married and their actions during their marriage prove an intent to maintain the separate property of each.  We disagree.  
Property may be excluded from the marital estate by written contract executed either before or after the marriage.[2]  To be presumed fair and equitable, however, a contract must meet several requirements.  The parties must have executed the contract voluntarily, with both parties represented by separate counsel.[3]  Additionally, full financial disclosure must be provided to each party, including information as to income, debts, and assets.[4]  
We agree with the family courts finding that the agreement in this case did not meet these requirements.  It is undisputed the parties were not separately represented by counsel.  Moreover, although Husband alleged on appeal that both parties were aware of each others assets, Wife testified that neither party made any financial disclosure.  In our view, then, the family court correctly determined that the agreement only evidenced the parties intent to keep their non-marital property separate and did not address the ownership of property acquired during the marriage after the execution of the agreement. 
We further agree with Wifes argument that, notwithstanding the parties intent about their separate property when they signed the agreement, their combined actions and conduct throughout the marriage evidenced a different intent.[5]  
Husband asserts the family court erred in finding the proceeds from the sale of his non-marital assets became transmuted simply by placement into the joint banking account.  We, however, do not interpret the appealed order to make this finding; rather, the family court determined these funds lost their non-marital character not only because they were deposited into the joint account into which Wife deposited her earnings, but also because they were co-mingled with marital funds and because Husband was unable to strictly account for them.  We find no error in this conclusion.[6]
When the Clover property was sold, part of the proceeds went to renovate the Belmont property, where the couple lived for some time.  Wife helped with the renovation efforts.  Some of the proceeds went toward the purchase of the garage package and generator, which the parties used in support of the marriage.  Again, Wife helped with the construction efforts.  Additional proceeds went into an account with Fortis Investors; however, the Fortis account was also funded with money from the joint checking account, to which both parties had access and which both parties used.  Finally, Husband acknowledged that he and Wife simply spent a part of the proceeds of the Clover property.  
The proceeds of the sale of the Belmont home were likewise untraceable.  Some of the proceeds were invested in the Briar Cliff RV Resort and later used to purchase the camper and truck as well as the kit to build the garage apartment.  Although the camper was acquired partly through the trade-in of non-marital property belonging to Husband, we hold the record supports the family courts finding that the truck and camper were marital property.  Husband and Wife purchased the camper for their joint use.  Some of Wifes disability income was used toward the purchase, and Wife testified she understood that they were buying it jointly.  The truck was used to haul the camper and for other marital purposes.  Even Husband admitted that we went truck shopping.  The parties lived in the camper for some time and traveled extensively.  
When Husband sold the nine-acre parcel in York County, he provided the financing to the buyer at twelve per cent interest.  Husband admitted that he and Wife enjoyed the proceeds together.  
Husband also had substantial assets in the form of a General Electric savings plan.  To the extent contributions were made during the marriage, these funds were marital property.[7]  From this, Husband invested a substantial amount with Alliance Leasing.  When Alliance Leasing went bankrupt, Husband received approximately $53,000.00, which he placed into a Wachovia account in his name.  Wife also separately invested her own funds with Alliance leasing, from which she got back only about $600.00.  When the parties divorced, only $32,000.00 remained in this account.  The family court found that Husband had not met his burden of showing the extent to which funds from the account constituted non-marital property.  We concur.  Nothing in the record provides information necessary to make such a determination. 
Husband further argues that the family court should not have held him accountable for the loss of the camper.  We find no error.  The temporary order enjoined both parties from disposing of, conveying out, transferring, secreting, or hiding any marital assets.  After the temporary order, husband cancelled the insurance on the camper.  Husband testified that shortly thereafter, the camper was stolen and he received no insurance proceeds from the loss.  We see no abuse of discretion in the family courts decision.  It would be inequitable to punish Wife for Husbands failure to maintain the insurance policy, particularly when, as here, Husband took the camper when he left the marriage, resulting in Wife having no place no live.[8] 
2.  Husband next argues that, because he made most of the monetary contributions, the family court erred in awarding Wife 35 per cent of the marital estate.  We find no abuse of discretion in the family courts apportionment of the marital estate.[9]
Here, the family court in this case recited that it considered all the statutory factors regarding equitable apportionment found.  Although Husband made the most of the monetary contributions to the marital estate, Wife made significant indirect contributions, assisting with both the Clover renovation and construction of the garage apartment and doing yard work and painting.  Furthermore, the marriage was fairly long in duration, Wife now has the lesser earning capacity, and Husbands actions directly contributed to the breakup of the marriage.  We find no abuse of discretion. 
3.  Husbands next contention is that the family court should not have awarded Wife alimony of $250.00 per month.  We find no abuse of discretion.[10] 
The marriage lasted 18 years, a relatively long duration. Wife is now disabled and in her sixties.  Additionally, Wife suffered emotionally due to the breakup of the marriage.  
Although Husband is also disabled, his income is higher than hers.  Both parties are on fixed incomes.  Wifes education and prior work experience are limited; therefore, training is unlikely to improve her earning potential.  In addition, Husband received 65 per cent of the marital estate in the equitable distribution.
Although the standard of living during the marriage was in dispute, Wife testified that they had a good life standard of living without financial problems, and Husband admitted they enjoyed money from the sale of his investments.  
Considering the foregoing, we hold the award of alimony to Wife in the amount of $250.00 per month was within the family courts discretion.
4.  We reject Husbands argument that the family court erred in awarding Wife attorneys fees she incurred to defend the divorce action he filed in Tennessee.
The family court has no jurisdiction to award attorneys fees for actions brought in another court.[11]  Nevertheless, under South Carolina Code section 20-3-130(H), the family court has the authority to order one party to pay a reasonable amount to the other for attorney fees, expert fees, investigation fees, costs, and suit money incurred in maintaining an action for divorce from the bonds of matrimony.[12]
In our view, the family court acted properly in requiring Husband to reimburse Wife for attorneys fees she incurred as a result the Tennessee lawsuit.  Here, the fees in dispute were awarded at the temporary hearing upon a finding by the family court that Husbands actions necessitated the Plaintiff having to hire an attorney in Tennessee to get an action dismissed.  After Wife filed for divorce in South Carolina, Husband evaded service, went to Tennessee, where he apparently had no prior contacts, and attempted to commence a separate divorce action there by making questionable assertions that he was a bona fide resident of Jefferson County, Tennessee, and that the acts complained of were committed while Husband was a resident of Jefferson County, Tennessee.  Given the possibility that Wifes South Carolina action could have been halted because an action between the parties regarding the same matters was pending in another court,[13] we hold the reimbursement to Wife of the fees she incurred to have this other action dismissed was properly granted as a cost necessarily incurred in maintaining the present case.
5.  Husband also challenges the amount of the attorneys fees award.  We find no abuse of discretion.[14]  The family court awarded $4,500.00 in attorneys fees.  Wifes attorney submitted an affidavit of fees and costs of $3,230.34, including 22.30 hours of work and costs in the amount of $898.34.  Wife conceded that this amount also includes charges incurred at the temporary hearing, in which Wife was awarded attorneys fees of $500.00; however, Husband acknowledged he never paid the fees awarded in the temporary hearing.  The attorneys fees awarded for the hiring and communications with the Tennessee attorney totaled $660.00.  In addition, trial time was not included in Wifes attorneys fee affidavit.  The family court expressly recited each of the required factors in the appealed order[15] and emphasized Wifes success in receiving alimony as well as an equitable interest in the marital property.  Under these circumstances, we affirm the family courts award of attorneys fees. 
 AFFIRMED.
 GOOLSBY, HUFF, and STILWELL, JJ., concur.

[1]  Because oral argument would not aid the court in resolving the issues on appeal, we decide this case without oral argument pursuant to Rule 215, SCACR.
[2]  See Bailey v. Bailey, 330 S.C. 326, 330, 498 S.E.2d 891, 893 (Ct. App. 1998) (holding that the family court had no jurisdiction to apportion property excluded by a post-marital agreement); see also S.C. Code Ann. § 20-7-473(4) (Supp. 2004) (providing that property excluded by written contract, including an antenuptial agreement, is non-marital property).
[3]  S.C. Code Ann. § 20-7-473(4).    
[4]  Id.
[5]  See Pappas v. Pappas, 300 S.C. 62, 66, 386 S.E.2d 301, 304 (Ct. App. 1989) (Transmutation is . . . a matter of intent to be determined from the facts of each case.).
[6]  See Bryan v. Bryan, 296 S.C. 305, 308, 372 S.E.2d 116, 118 (Ct. App. 1988) (Property, nonmarital at the time of its acquisition, may be transmuted into marital property (1) if it becomes so commingled with marital property as to be untraceable; (2) if it is titled jointly; or (3) if it is used in support of the marriage.).
[7]  See Pool v. Pool, 321 S.C. 84, 89, 467 S.E.2d 753, 757 (Ct. App. 1996) (stating contributions during the marriage to an IRA constitute marital property), affd as modified on other grounds, 329 S.C. 324, 494 S.E.2d 820 (1998). 
[8]  Husband also argues on appeal that [t]he camper had apparently depreciated almost fifty percent; however, he offered no record citation to support this assertion and the family court did not make any ruling in the appealed order on depreciation.
[9]  See Roberson v. Roberson, 359 S.C. 384, 389, 597 S.E.2d 840, 842 (Ct. App. 2004) (stating the family court has discretion to decide what weight to assign the various equitable apportionment factors); Bragg v. Bragg, 347 S.C. 16, 23, 553 S.E.2d 251, 255 (Ct. App. 2001) (stating the family courts apportionment will not be disturbed on appeal absent an abuse of discretion); Johnson v. Johnson, 296 S.C. 289, 300, 372 S.E.2d 107, 113 (Ct. App. 1988) (stating that, [o]n review, this Court looks to the fairness of the overall apportionment).
[10] See Dearybury v. Dearybury, 351 S.C. 278, 282, 569 S.E.2d 367, 369 (2002) (noting an alimony award will not be reversed on appeal absent an abuse of discretion).
[11] See Burns v. Burns, 323 S.C. 45, 50, 448 S.E.2d 571, 573 (Ct. App. 1994) (The award of attorneys fees by the family court is limited to those fees incurred in actions brought in the family court.); Collins v. Collins, 239 S.C. 170, 178, 122 S.E.2d 1, 4 (1961) (holding that a court has no jurisdiction to award attorneys fees incurred in related actions, including divorce actions commenced in other counties that were dismissed for lack of jurisdiction).  
[12] S.C. Code Ann. § 20-3-130(H) (Supp. 2004).
[13] See Rule 12(b)(8), SCRCP (providing as a ground for judgment on the pleadings the defense that another action is pending between the same parties for the same claim).
[14] See Bowen v. Bowen, 327 S.C. 561, 563, 490 S.E.2d 271, 272 (Ct. App. 1997) (stating an award of attorneys fees is within the sound discretion of the family court).
[15] See Glasscock v. Glasscock, 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991) (enumerating the factors that the family court should consider in determining reasonable attorneys fees).