## GIUSEPPINA COPPOLA *v.* GINO FARINA

Superior Court, Judicial District of Stamford-Norwalk
File No. FA-05-4005388S

Memorandum filed August 15, 2006

*Martha H. Deegan*, for the plaintiff.

*Richard H. Raphael*, for the defendant.

TIERNEY, J. How are cash gifts received from the "bride's side" treated in a contested dissolution trial?

Despite the fact that there are thousands of dissolution opinions issued by Connecticut judges, this question has not been decided by any Connecticut trial court or appellate court. It is an issue of first impression.

After hearing all the evidence, claims of law and claims of fact, the court finds the following facts and legal conclusions.

The plaintiff, Guiseppina Coppola, and the defendant, Gino Farina, were married on May 19, 2002. This is their first marriage. They are in their thirties. Both were employed throughout the marriage. There are no children issue of this marriage. Immediately after the wedding ceremony, their wedding reception was held at the Glen Island Harbor Club overlooking Long Island Sound. One hundred and seventy-two guests attended.

The parties prepared a one page typed guest list containing columns listing table assignments and other information. They received no gifts prior to the wedding. At the wedding reception, they received gifts of cash and checks. Each gift of cash and check was contained in an envelope along with a card. The division of these wedding gifts is in dispute.

The morning after the wedding, the newlyweds opened the envelopes and made a handwritten notation on the one page typed guest list of the amount of money given by each of the listed guests. The parties agree that this list is accurate. They received $19,340 in cash and $6500 in checks. The one page typed guest list with the handwritten notations was marked as exhibit four. Most gifts of cash or checks were in the range of $250

or $300 per couple. There were a few gifts of a lesser sum, one of $1000, one of $600 and two of $500.

The plaintiff wife testifying on direct examination at trial was asked a question by her counsel: "How many of the 172 guests were on the bride's side?" The defendant husband's counsel objected. Thus, the issue now before the court was properly framed. Neither party offered any court decisions to support their claims. The plaintiff's counsel candidly admitted the she was not able to locate any Connecticut case on the subject.

The court took a recess, conducted independent research and gave the parties an opportunity to research the law on the subject. An oral decision was rendered and the trial continued. This memorandum of decision is a memorialization of that oral decision.

I

DISCUSSION OF LAW

Connecticut is an all property state. *Krafick* v. *Krafick*, 234 Conn. 783, 792, 663 A.2d 365 (1995). "The distribution of assets in a dissolution action is governed by [General Statutes] § 46b-81 . . . . This approach to property division is commonly referred to as an 'all-property' equitable distribution scheme." (Citations omitted.) Id. Connecticut has no statutory definition of "marital property." Connecticut does not have a statutory concept known as "separate property."

"A gift is the transfer of property without consideration. It requires two things: a delivery of the possession of the property to the donee, and an intent that the title thereto shall pass immediately to him." *Guinan's Appeal from Probate,* 70 Conn. 342, 347, 39 A. 482 (1898); see also *Hartford-Connecticut Trust Co.* v. *Slater,* 114 Conn. 603, 613, 159 A. 578 (1932); *City National Bank* v. *Morrissey,* 97 Conn. 480, 483, 117 A. 493 (1922); *Main's Appeal,* 73 Conn. 638, 640, 48 A. 965

(1901). "To make a valid gift inter vivos, the donor must part with control of the property which is the subject of the gift with an intent that title shall pass immediately and irrevocably to the donee. . . . The burden of proving the essential elements of a valid gift rests upon the party claiming the gift." (Citations omitted.) *Kriedel* v. *Krampitz*, 137 Conn. 532, 534, 79 A.2d 181 (1951).

The factors that constitute a complete gift are set forth by our Supreme Court in *Hebrew University Assn.* v. *Nye*, 148 Conn. 223, 169 A.2d 641 (1961): "To support a factual conclusion of an executed inter-vivos gift, there would have to be a donative intention and at least a constructive delivery. . . . It is true that the donative intention need not be expressed, nor the delivery made, in any particular form or mode. . . . For a constructive delivery, the donor must do that which, under the circumstances, will in reason be equivalent to an actual delivery. It must be as nearly perfect and complete as the nature of the property and the circumstances will permit." (Citations omitted.) Id., 232–33.

After a gift is completed by delivery, it is not necessary that the donee shall retain possession of the property. It may be redelivered to the donor to be held by him as agent or trustee for the donee or for any purpose not inconsistent with ownership on the part of the donee. See *Meriden Trust & Safe Deposit Co.* v. *Miller*, 88 Conn. 157, 163, 90 A. 228 (1914); *Candee* v. *Connecticut Savings Bank*, 81 Conn. 372, 375, 71 A. 551 (1908); see also *Prendergast* v. *Drew*, 103 Conn. 88, 91, 130 A. 75 (1925).

Some cases have examined the issues of notice to the donee of such gift and an acceptance by the donee. The delivery of the gift may be actual or constructive. *Meriden Trust & Safe Deposit Co.* v. *Miller*, supra, 88 Conn. 163. "In the absence of a resulting or constructive trust a completed gift is irrevocable." *Manyak* v.

*Manyak,* 29 Conn. Sup. 1, 2, 268 A.2d 806 (1970). Upon finding the issues of delivery and donor's intent in favor of a gift, the title to the gift in the donee is absolute, all title and right having passed from the donor to the donee. *Kerrigan* v. *Rautigan,* 43 Conn. 17, 23 (1875); see also *Meriden Trust & Safe Deposit Co.* v. *Miller,* supra, 163.

In this case, both parties stated that they did not intend to offer testimony of wedding guests as to their donative intent at the time that they gave the cash or checks. The only testimony of donative intent would be furnished by the parties. This court is of the belief that the testimony of the two litigating parties by themselves as to donative intent would be self-serving, conflicting evidence caused by the desire of each party to obtain the distribution of the property. "In domestic litigation, where the donor's intent is proved primarily by testimony of the parties, the desire of each party to obtain the property fosters conflicting evidence presented by self interested witnesses. Rarely will the donor's intent be clearly established. The family court is then reduced to deciding the question on the credibility of the parties unless an additional rule is adopted." *Pappas* v. *Pappas,* 300 S.C. 62, 65, 386 S.E.2d 301 (S.C. App. 1989).

There was no evidence that the gifts were other than unconditional. The cash and checks were physically handed by the donors to the parties at the wedding reception in front of 170 witnesses, who at that exact moment may or may not have been paying full attention to the delivery of the gift. Both parties made an offer of proof that no donors would be testifying. The cards that accompanied the gifts were not offered in evidence. The handing over of cash by the donor in an envelope containing a gift card when all other guests at the wedding reception did the same and the acceptance by the parties of that envelope containing the cash or check

and the gift card satisfies any issue as to notice and acceptance. The court therefore finds that there is sufficient proof of delivery. The only remaining issue is in regard to the donor's intent. The question of the donor's intent is one of fact. See *Meriden Trust & Safe Deposit Co.* v. *Miller,* supra, 88 Conn. 162; *Franke* v. *Franke,* 17 Conn. Sup. 136, 141 (1951), aff'd, 140 Conn. 133, 98 A.2d 804 (1953).

The court finds that the cash and checks given by the wedding guests at the wedding reception are not subject to a resulting or constructive trust, were given with notice to the donees, were accepted by the donees, and were given by the donors with full, complete and unconditional delivery by the donors with the intent by the donors to part with ownership, possession and custody of these funds to the parties. The court finds the donor's intent clear that an unconditional gift was made. The only remaining issue is: Was the donor's intent a gift to one party or both parties? Thus, the "bride's side" controversy remains.

General Statutes § 46b-81 (c) provides in relevant part: "In fixing the nature and value of the property, if any, to be assigned, the court, after hearing the witnesses, if any, of each party . . . shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates." In addition, the court must consider the "nonmonetary contribution [made] to the marriage . . . ." *O'Neill* v. *O'Neill,* 13 Conn. App. 300, 312, 536 A.2d 978, cert. denied, 207 Conn. 806, 540 A.2d 374 (1988).

Of these factors, the only one applicable to the division of cash wedding gifts is the "contribution of each of the parties in the acquisition . . . in value of their respective estates." General Statutes § 46b-81 (c). It is this provision of § 46b-81 (c) that the plaintiff states as authority that she is entitled to a greater share in the distribution of the $25,840 cash wedding gifts because the "bride's side" contributed more. She claimed the evidence would show that the bride had more family and friends in attendance than did the "groom's side." The defendant poses two objections. The first is substantive in that he believes that the evidence will show an equal number of people on the "bride's side" and the "groom's side." The second objection is procedural in that he claims that such an issue is irrelevant because Connecticut is an all property state. The gifts were made after the parties were husband and wife; thus, all the money received at the wedding is "marital property" regardless of whose relative or friend was the donor.

Treatises have stated that if the donors' intent is not clear, there are two basic approaches for classifying wedding gifts. Annot., Rights in Wedding Presents as Between Spouses, 75 A.L.R.2d 1365, 1366 (1961). Those two approaches are referred to as the New York rule and the English rule.

The New York rule presumes that a wedding gift is intended as a joint gift unless the gift is appropriate for the use of only one spouse or is peculiarly earmarked for one particular spouse. This rule assumes that there is inadequate or insufficient evidence of the donor's intent. See *Avnet* v. *Avnet*, 204 Misc. 760, 768, 124 N.Y.S.2d 517 (1953).

*Avnet* involved litigation between spouses and was not a divorce action. The plaintiff wife instituted an action for conversion against the defendant husband to recover the value of furniture, household furnishings

and personal effects that she claimed to be her exclusive property. Id., 761. She further claimed that all wedding gifts were in cash and delivered to her personally almost entirely by friends and relatives on the "bride's side." (Internal quotation marks omitted.) Id. The husband disputed that claim and indicated that the cash gifts came generally from his friends and relatives on the "groom's side." (Internal quotation marks omitted.) Id. The court examined the history of women's rights in New York starting with man's abandoning of nomadic life and considered New York legislation more than 150 years ago giving women the right to own property in their own name. Id., 762–63. The court concluded that this issue was a matter of first impression. The trial judge queried: "Does it make a difference whether the money . . . was delivered into the hands of the bride or of the groom—whether it came from the bride's 'side' or from the groom's 'side.' This is the most intriguing question which this court is called upon to answer." Id., 764.

The *Avnet* court turned to Emily Post on Etiquette in the 1932 edition: "Wedding presents are all sent to the bride, and are, according to law, her personal property." *Avnet* v. *Avnet*, supra, 204 Misc. 764. The court noted that Miss Post failed to cite any legal authority for such a custom. Id., 765. It further noted that this legal pronouncement is not recognized by New York case law and does not cover the circumstances found in this case, to wit, cash wedding gifts given after the ceremony at the wedding reception. The trial court did not find that the cash gifts were appropriate for the use of only one spouse, nor were the gifts committed to one spouse. The court found no evidence of the donor's intent as to each cash gift.

After listening to the disputed testimony of the husband and wife in this case, the *Avnet* court concluded: "I am convinced that neither side told the full truth

[and that the] plaintiff has failed in her burden of proof to satisfy me by a fair preponderance of the credible evidence that the money wedding gifts amounted to as little as she claims or that they came entirely from the bride's 'side.' Moreover, I find no specific proof that any such gifts came 'earmarked' to be the exclusive property of the bride." Id., 768.

The trial judge in *Avnet* thus concluded his decision by declaring the New York rule: "In passing I might say that more so than any other period in the long history of mankind, this is the age of '50-50' marriages. The time has come to say clearly that all wedding gifts whether from the bride's 'side' or from the groom's, excepting such items which are peculiarly adaptable to the personal use of either spouse, and those gifts which are specifically and unequivocally 'earmarked' as intended exclusively for the one or the other of the spouses, commonly intended for general use in the household, are the joint property of both parties to the marriage. This reasoning should apply as well to the things of like use purchased with cash wedding gifts not otherwise 'earmarked.' " Id.

This issue was also discussed in 1989 in *Pappas*, the South Carolina case cited previously, in which the English rule was applied. *Pappas* was a divorce action based upon South Carolina statutes, which defined marital property as "all real and personal property which has been acquired by the parties during the marriage." *Pappas* v. *Pappas*, supra, 300 S.C. 64, quoting S.C. Code Ann. § 20-7-473 (Law Co-op. 1976). South Carolina also had a statutory definition of separate property. South Carolina case law holds that "an antenuptial gift may either be a joint gift given to both parties or a separate gift given to one party. If it is a joint gift, then the parties hold joint title and the property is presumably transmuted into marital property upon marriage. If it is a separate gift, the property is not subject to equitable

apportionment unless it, too, is transmuted. The question of whether a gift is joint or separate is resolved by ascertaining the intent of the donor." *Pappas* v. *Pappas*, supra, 300 S.C. 64; see *Berry* v. *Berry*, 290 S.C. 351, 350 S.E.2d 398 (S.C. App. 1986), aff'd, 294 S.C. 334, 364 S.E.2d 463 (1988); *Johnson* v. *Herrin*, 272 S.C. 224, 250 S.E.2d 334 (1978).

The *Pappas* court had the opportunity to discuss the delivery of certain wedding gifts, as to whether they should be viewed as constructive delivery to the bride and groom or to the bride alone. The court stated: "If the donor's intent is not clear, there are two approaches for determining the ownership of antenuptial gifts. One is to consider the nature of the property itself. Under this approach, all wedding gifts commonly intended for general use in the household are the joint property of both parties to the marriage. On the other hand, if the property is peculiarly for the personal use or adornment of either spouse, the property is a separate gift to the party who would naturally use it." *Pappas* v. *Pappas*, supra, 300 S.C. 65.

The court then cited that New York rule in *Avnet*. Id. The *Pappas* trial court indicated that the South Carolina appellate courts had not yet adopted a rule concerning such gifts and, in the opinion of the trial court, the English rule was the better rule. Id.

The South Carolina Court of Appeals then adopted the English rule by citing the English Court of Appeals case of *Samson* v. *Samson*, All E.R. 653 (1960) ("[w]here there is evidence of intention on the part of the donor, it may well be that wedding presents may be found to have been given either to one spouse or to the other, or to both: but where no intention is clear the court is fully entitled to draw the inference . . . that money and gifts in kind originating from one side of the family were intended for the husband and those from the other

side, from friends of that party, were intended for the wife"), reprinted in 75 A.L.R.2d 1360, 1364. "Under the English rule, the donor is presumed to have given the gift to the party to whom he is more closely related. The rule rests on an objective fact, easily and reliably proven without raising issues of witness credibility. In most cases, the rule will carry out the actual intent of the donor. It more closely parallels the South Carolina law that inherited property and third party gifts are separate property. . . . In summary, in determining the character of disputed antenuptial gifts, the family court should first consider all of the evidence relative to the donor's intent. If the donor's intent is apparent from the clear preponderance of the evidence, his intent controls. If, however, the evidence as a whole is inconclusive, then the court should apply the English Rule." (Citations omitted.) *Pappas* v. *Pappas*, supra, 300 S.C. 66.

Should Connecticut adopt the New York rule or the English rule?

Both the English rule and the New York rule indicate that the donor's intent controls. This is consistent with Connecticut law. In the underlying case, the parties stated that they would offer no evidence from the donors themselves as to the intent for the cash or checks given at the wedding reception. This court finds that the self-interested testimony of the parties themselves cannot be relied on to decide the issue of donor's intent. There was no other evidence of the donor's intent. Because cash is fungible, there was nothing specific in the nature of the cash that could be used by only one spouse. For example, the following gifts in a Michigan case were determined to be for the personal use of the husband: "[o]ne cigar band smoker set; three packs of cards; two glass humidors; one shaving glass; one steel fishing rod and reel . . . and one brass cuspidor." (Internal quotation marks omitted.) *Darwish* v.

*Darwish*, 100 Mich. App. 758, 775, 300 N.W.2d 399 (1980), quoting *Bloss* v. *Bloss*, 187 Mich. 425, 429, 153 N.W. 666 (1915).

Marital property is defined in South Carolina as all real and personal property that is acquired by the parties during the marriage. Connecticut is an all property state and, therefore, all real and personal property owned by parties regardless of when acquired or how acquired through employment, gifts, inheritance, before the marriage or jointly acquired or separately acquired during the marriage are all considered property for the purpose of marital distribution in Connecticut. The English rule has no foundation in Connecticut. This court chooses to adopt the New York rule.

## II

## CONCLUSION

There is no evidence from the donors as to the donor's intent for the cash wedding gifts given at the wedding reception. The parties do not intend to call any of the donors as witnesses. No wedding gift cards will be offered. All of the disputed wedding gifts were cash or checks. Cash is fungible. There will be no evidence offered of a large cash gift or a cash gift allocated to a certain purpose, such as paying off of the wife's student loans or the improvement of real property owned by the husband for years prior to the marriage. Each of the gifts was made in cash or in a check, a cash equivalent. All gifts were made at the wedding reception. The wedding guests had attended the marriage ceremony in which the parties were declared husband and wife. Each of the wedding guests had attended the reception where the wedding singer introduced the parties as Mr. and Mrs. Gino Farina. Thereafter, the cash wedding gifts were given. The court therefore rules that it is irrelevant how many of the 172 guests were from the "bride's side," how many of the 172 were her family and friends, how many of the 172 guests were from the

"groom's side" and how many of the 172 were his family and friends.

The defendant's objection is sustained. The donor of the cash and check gifts made at the wedding reception is irrelevant.